(92 South. 193)

## AGE–HERALD PUB. CO. v. HUDDLESTON.
### (6 Div. 30.)

(Supreme Court of Alabama. Nov. 12, 1921. Rehearing Denied Dec. 22, 1921.)

1. **Libel and slander** �găm⟶27, 104(3)—**Repetition or republication not a new cause of action, but is evidence of malice.**

A repetition or republication of a libel is not a new cause of action, but merely an aggravation of the pre-existing cause and in proper cases evidence of actual malice.

2. **Corporations** ⟨⟶503(2)—**"Injury," within statute fixing venue of actions against corporations, means wrong and not damage.**

Code 1907, § 6112, authorizing actions against corporations for personal injuries to be brought in the county where the injury occurred, uses the word "injury" in its proper legal sense of wrong and as importing a wrongful act or omission, and not as meaning damage, especially in view of section 6110, the general venue statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Injury.]

3. **Corporations** ⟨⟶503(2)—**Action against corporation for libel must be brought in county where newspaper published.**

Code 1907, § 6112, authorizing actions against corporations for personal injuries in the county where the injury occurred, only permits an action for libel published in a newspaper in the county where the newspaper was published and not in counties where it was merely circulated, especially in view of the form of complaint prescribed by section 5382.

4. **Libel and slander** ⟨⟶25—**"Publish" defined.**

To "publish" a libel in the sense of doing a civil wrong is to make it known to any person other than the person libeled, while to "publish" a newspaper is by common understanding to compose, print, issue, and distribute it to the public, and especially its subscribers at and from a certain place.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Publish.]

5. **Statutes** ⟨⟶182—**Should be given construction conducive to fairness and justice and in harmony with general policy.**

Where the terms of a statute do not indicate with reasonable certainty their intended application to particular cases, though their general intent and application are clear, they should be given such a construction as is conducive to fairness and justice and in harmony with the general spirit and policy of the statute, rather than one offensive thereto, if such construction is reasonably consistent with the language used.

Sayre and Gardner, JJ., dissenting.

Appeal from Circuit Court, Blount County; O. A. Steele, Judge.

Action by George Huddleston against the Age-Herald Publishing Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Miller & Graham and Hugh Morrow, all of Birmingham, and Kelton & Son and Nash & Fendely, all of Oneonta, for appellant.

The plaintiff was not entitled to maintain this action in the circuit court of Blount county. Sections 6110, 6112, Code 1907; 140 Ala. 258, 72 South. 956; 219 U. S. 1, 31 Sup. Ct. 212, 55 L. Ed. 65, 21 Ann. Cas. 942; (D. C.) 173 Fed. 227; 209 Mo. 35, 107 S. W. 496; 249 Mo. 332, 155 S. W. 1068; 25 Cyc. 446, 447; 132 Ala. 576, 31 South. 469, 90 Am. St. Rep. 930. The publication of an issue of a newspaper is but one act, and not numerous separate and distinct acts. Authority supra. The words "injury" and "damage" are not synonymous, and the word "injury," as used in section 6112 of the Code, is synonymous with the phrase "where the act or omission complained of may have been done or may have occurred," as used in section 6110 of the Code. 15 Ala. App. 532, 74 South. 88; 200 Ala. 496, 76 South. 438. Counsel discussed other assignments of error, with full citation of authority, but in view of the opinion it is not deemed necessary to set them out.

Weakley & Rice and John W. Altman, all of Birmingham, for appellee.

The suit was properly brought in Blount county. 18 A. & E. Enc. of Law, 1119; 25 Cyc. 433; 105 Ky. 365, 49 S. W. 15; (Ky.) 61 S. W. 18; 66 App. Div. 582, 73 N. Y. Supp. 273; 63 Tex. 686; 144 Cal. 205, 77 Pac. 918; 63 Fed. 873, 11 C. C. A. 476; (Tenn. Ch.) 38 S. W. 444; 105 Ky. 365, 49 S. W. 15; (Ky.) 61 S. W. 18; 74 Ala. 466; 74 Ala. 487; 75 Ala. 489; 191 Ala. 634, 68 South. 55; 199 Ala. 470, 74 South. 437; 196 Ala. 642, 72 South. 258;

⟨⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

196 Ala. 150, 72 South. 96; 192 Ala. 500, 68 South. 356. Every publication or circulation of a newspaper containing libelous matter is actionable, and the publication and circulation of the paper in Blount county is libelous and actionable. 97 Ga. 452, 25 S. E. 341; 73 Cal. 120, 14 Pac. 399; 222 Mo. 580, 121 S. W. 93; 227 Mo. 471, 127 S. W. 332; 74 Wash. 96, 132 Pac. 858, 49 L. R. A. (N. S.) 941, Ann. Cas. 1915A, 695; 3 Pick. (Mass.) 304, 15 Am. Dec. 214. The action was transitory, and could be brought in any county in the state. 40 Cyc. 105–107; 106 Ala. 570, 17 South. 716; 2 Hill (N. Y.) 320; 14 Ill. 459; 17 R. C. L. § 120. Counsel discussed other assignments of error, but in view of the opinion it will not be necessary to here set them out.

SOMERVILLE, J. The complaint is in nine counts, each of which, in statutory form, declares upon a separate libel published by defendant of and concerning the plaintiff, "in a newspaper published at Birmingham."

The action is brought in the circuit court of Blount county, and venue jurisdiction of the court is challenged by eight several pleas in abatement, each of which sets up facts from which it concludes that the venue of the action is improperly laid in Blount county, and to each of which a demurrer was duly sustained.

It is not necessary to state in detail the allegations of all of these pleas, and the grounds of demurrer thereto, but it will suffice to say that the meritorious question raised by the demurrers and their sustension by the trial court is whether the act of defendant in mailing libelous copies of its paper at Birmingham, addressed to and received by subscribers in Blount county, amounted per se to a publication or circulation by defendant of those papers in Blount county, so as to constitute an injury which occurred in that county, within the meaning of section 6112 of the Code, which permits the venue of actions against corporations for personal injuries to be laid "in the county where the injury occurred." It is conceded by counsel for plaintiff that the venue as here laid depends solely upon the consideration above stated, and other bases of venue need not be noticed, since all of them are excluded by the allegations of the pleas.

Defendant's contention, of course, is that the printing, publishing, and mailing of its papers at Birmingham, though it resulted proximately and necessarily in their circulation and exposure in other counties, including Blount, effected a complete publication of the alleged libels in Jefferson county, and that their subsequent circulation and exposure in other counties were not separate publications of the libels constituting independent and separately actionable wrongs, but were mere elements of damnum growing out of the primary wrong which occurred in Jefferson county, where both plaintiff and defendant reside, and where the venue must therefore be laid.

Or, if several copies of the original issue, as published at Birmingham, have been subsequently caused to circulate in Blount county by the act of defendant in mailing them at Birmingham, nevertheless the injury—injuria, not damnum—occurred in Jefferson county within the meaning of section 6112 of the Code, which lays the venue "in the county where the injury occurred."

The questions thus presented have never been considered by this court, but, on common-law principles, and under some venue statutes, the authorities in general seem to support the view that an action for libel may be brought in any jurisdiction where the libelous matter was published or circulated.

In 25 Cyc. 433, it is said:

"In the case of libel, it is held that it is not the jurisdiction in which the article is printed, but the jurisdiction in which it is published and circulated, that determines whether the words used are actionable. So the general rule is that an action for libel may be brought and tried in any county in which the libel was published or circulated."

And in 18 Am. & Eng. Ency. Law (2d Ed.) 119:

"An action or prosecution for a libel may, as a general rule, be brought either in the jurisdiction where the defendant resides or is found, or in any jurisdiction where the defamatory matter was published or circulated."

Those texts are well supported by the cases cited in the notes.

The cases supporting the view that an action for libel against a newspaper for libelous matter published by it may, under venue statutes of varying phraseology, be brought in any county where the paper is circulated, regardless of where it is printed, published, and sent out for distribution, are collected in the notes to the following cases: Graham v. Mixon (Cal.) L. R. A. 1918F, 1023, 1026, 1029; State v. Piver (Wash.) Ann. Cas. 1915A, 695, 697; State v. Huston (S. D.) 9 Ann. Cas. 381. Very full discussions of the subject will be found in Julian v. K. C. Star Co., 209 Mo. 35, 107 S. W. 496, and State v. Moore, 140 La. 281, 72 South. 965, in both the majority and the minority opinions.

In the Julian Case, supra, under a statute permitting an action to be brought against corporations "in the county in which the cause of action occurred," it was held by the majority of the court that a libel suit against a newspaper could be maintained in any county where the newspaper was circulated. The following from the opinion of

Valliant, J., is fairly representative of the reasoning upon which that view of the question is supported:

"When therefore the defendant sent its newspaper containing the article complained of into Platte county and there gave it out to the public, if the article was libelous in character what element was lacking to constitute a cause of action then and there? Let us take the definition of 'cause of action' as given in the brief of defendant's learned counsel; it is the existence of 'every fact which is material to be proved to entitle the plaintiff to recover.' What fact essential to the plaintiff's right of recovery did not occur in Platte county? But it is said that the publication first occurred in Jackson county and that the plaintiff's right of action accrued there if at all.· We agree with counsel for defendant that the one issue. of the newspaper, though it may have been of many thousand copies distributed in many different counties, gave but one cause of action, but to reach that conclusion we must say that there was but one publication. If we should say that the publication in Jackson county was a publication distinct from that in Platte county, then we would have to say that there were more than one publication and more than one cause of action. But there was but one publication—one utterance—and though some of the papers did not reach their destination as soon as others, yet they all emanated from the one act and all constituted but one libel, if libel at all. It is the publication of the libel, not the printing of it, that gives the right of action. When the publisher gives out his paper to be circulated not only in one but in many counties and it is circulated as he intended, he is deemed in law to have published it in all counties, and the act is no less a publication in one county than another.

"If the defendant's newspaper was, in obedience to defendant's purpose, given public circulation in Platte county and if it contained a libel of the plaintiff, the plaintiff's cause of action accrued in that county."

The opposing view is well stated in the dissenting opinion of Graves, J., in which Lamm, J., concurred:

"It is broadly contended that under section 997 a plaintiff in this one class of cases has the right to select the forum of his trial and locate it in either of the 114 counties of the State, provided copies of the paper reach all of them. That he can leave the county of his residence, which is likewise the residence of the defendant, and where the first publication is made, and pick from the 114 counties one where the citizenship is such that, to his mind, indicates practical results in his suit. * * *

"We can give to this statute a reasonable construction and one which violates no constitutional mandates. Every letter of the statute can be enforced by saying, under the admitted facts of this case, the cause of action accrued in Jackson county, where it stands admitted that the paper containing the article alleged to be libelous was first given out to the reading public, and thereby first published. Or if the first publication be in some other county, let

the action be brought there. Had we not better read into this statute words [which] would be consonant with a reasonable construction, than read into it, as first above indicated, words which make it abhorrent to reason, right justice and fairplay?

"Whilst the law broadly stated says that each publication constitutes a cause of action, yet the courts hold, as was admitted in the argument of the case and in respondent's brief, that but one suit can be brought on the same libelous publication, no matter in how many places, or at how many times it is published, i. e., given to the reading public.

"The extent of the publication may be shown to enhance the damages, and the suit thereby draws to itself all alleged causes of action, and makes of them all the cause of action mentioned by the statute. The courts have made this rule of law, because to permit a great multiplicity of suits for the one libelous article would be to shock the sense of justice and right.

"Then why not, in the interest of a construction of this statute, which would comport with justice and right, say that the cause of action mentioned therein, in cases of libel, means the cause of action accruing by the first publication of the article? We believe that we should so construe this statute, and for that reason this suit should have been brought in Jackson county and not elsewhere."

In State v. Moore, supra, under a constitutional provision requiring that all criminal trials "shall take place in the parish in which the offense was committed," it was held, Monroe, C. J., dissenting, that the printing and pubication of a criminally libelous newspaper in New Orleans, though it was from there mailed to and circulated in other parishes, was an offense committed in New Orleans, and was not indictable and triable in any other parish. We quote from the opinion of O'Neill, J., the following extract, the reasoning of which is pertinent to the question before us:

"The learned district attorney says in his brief that a verdict of the Twenty-Fourth judicial district court in and for the parish of East Feliciana, on the bills of indictment or information in this case, would free the defendants from prosecution on the same libelous matter in any other jurisdiction or in any other court of this state. That admission is an ackowledgment of the correctness of the proposition that only one offense was committed, if the article complained of was libelous, by the publication of the article in the Times-Picayune, no matter how many parishes or jurisdictions the paper circulated in. If what Daniel D. Moore did was a complete offense, and constituted only one offense, it was certainly committed in the city of New Orleans. If the fact that a bundle of copies of the Times-Picayune, containing the alleged libelous article, was sent to the parish of East Feliciana conferred jurisdiction upon the district court of that parish to try the alleged offender for what he did in the city of New Orleans, it must be upon the theory that the sending of the bundle of papers to the parish of East Feliciana constituted an offense in that parish. If that be true, the sending of

another bundle of the newspapers to the parish of Rapides constituted another offense in that parish, and the sending of another bundle of the newspapers to the parish of Plaquemine constituted another distinct offense there; and, on the same principle, the sending of each newspaper to each individual subscriber or purchaser was a distinct offense. It would lead to the anomalous proposition that as many distinct offenses were committed in as many different jurisdictions, by what Daniel D. Moore did in the city of New Orleans, as there were copies of the newspaper containing the alleged libelous article; that what Daniel D. Moore did in the city of New Orleans was multiplied into as many thousands of offenses on his part as there were subscribers and purchasers and readers of that issue of the Times-Picayune. To say that a prosecution and conviction by a court having jurisdiction in any parish where one of the newspapers found its way would protect the defendant from prosecution in any other parish does not answer the constitutional requirement that he shall be tried for what he did in the parish where the offense was committed, and in no other parish."

It is true, as pointed out by counsel for appellee, that in the later case of Vicknair v. Daily Times Pub. Co., 144 La. 809, 81 South. 324, in an action for civil libel, it was said that the case of State v. Moore, supra, "can have no application to a civil action"; and it was held that the circulation of its libelous newspapers, by its own agents, in the parish of Jefferson, though published in New Orleans, laid the venue of the action in Jefferson. It is clear, however, that the Vicknair Case does not impugn the reasoning or conclusion of the Moore Case; for it is grounded upon a venue statute which authorizes the bringing of an action for damages against a corporation "in the parish where such damage is done, or trespass committed," and the court evidently construed the word "damage" as meaning "damnum" in its proper sense of "hurt," so that the "locus" of the "hurt," done directly by the defendant, became the "locus" of the action.

In the case of Louisville Press. Co. v. Tennelly, 105 Ky. 365, 49 S. W. 15, under a statutory provision that every action for injury to character must be brought in the county in which the defendant resides, or "in which the injury is done," it was held that a civil action could be brought in any county where the libelous paper circulated. Said the court:

"It may be true that the cause of action accrued to the plaintiff in Jefferson county so soon as the Commercial was printed, and placed in the mills in Jefferson county, but that fact does not necessarily preclude the plaintiff from maintaining his action in any county in which the *injury to him was inflicted.* It seems to us that the true construction and meaning of section 74 is that the plaintiff may institute his action in * * * any county where he is *injured by the publication of the libel.*" (Italics ours.)

It is thus apparent that the Kentucky court interpreted the word "injury" in the venue statute as synonymous with "damage" or "hurt," as did the Louisiana court in Vicknair v. Daily Times Pub. Co., supra, and not as meaning the "injuria," or legal wrong, which "caused" the damage or hurt.

In the case of State v. Piver, 74 Wash. 96, 132 Pac. 858, 49 L. R. A. (N. S.) 941, Ann. Cas. 1915A, 695, it was held that the editor and proprietor of a newspaper published in San Francisco, who mailed libelous papers to subscribers in King county, Wash., causing them to circulate therein, was subject to a criminal prosecution in that county, under a statutory provision that such a person could be proceeded against "in any county where such libelous matter was published or circulated." Obviously, the decision was correct under the very terms of the venue statute.

At the common law, from a very early period, it was held that a prosecution for criminal libel would lie in any county or local jurisdiction in which the libel was circulated —apparently upon the theory that "every fresh publication was a fresh crime." Odgers on Slander and Libel (5th Ed.) pp. 467–469; Newell on Slander and Libel (3d Ed.) p. 299; 1 Bishop on Cr. Law (8th Ed.) §§ 136, 142, 939; note to State v. Huston (S. D.) 9 Ann. Cas. 382. And it seems to have been generally held that mailing libelous matter constitutes a publication both in the jurisdiction where it is mailed and in that where it is received by the addressee, and may therefore support an action or prosecution in either jurisdiction. 18 Am. & Eng. Ency. Law (2d Ed.) 1119; Desty's Am. & Eng. Crim. Law, 472, § 140(B).

These old common-law principles undoubtedly had their origin in relation to the single acts of individuals, in a primitive society, and cannot, either as a matter of principle or common sense, be applied without qualification to the publication of modern newspapers.

It is not clear from the older authorities whether an action or prosecution could be maintained separately and simultaneously, and prosecuted to judgment, for every separate publication of the same libel, or in every jurisdiction where it was circulated. If every separate publication of the identical libel is indeed a separate offense, there is no escape from the conclusion that separate actions and prosecutions may be simultaneously maintained in every jurisdiction. As declared by District Judge Anderson in U. S. v. Smith (D. C.) 173 Fed. 227, where the identical question was presented in a case of criminal libel "there is no middle ground." If every copy of a newspaper separately delivered is a distinct offense, then a daily newspaper with a circulation of 100,000 is guilty of that many crimes or civil offenses

as the result of a single issue. But, sensible of the injustice and absurdity of such a result, as applied to newspapers, the majority of the Missouri court in Julian v. K. C. Star Co., supra, held that, regardless of the number of papers simultaneously or successively mailed out from Jackson county and circulated in other counties, "there was but one publication—one utterance—and though some of the papers did not reach their destination as soon as others, yet they all emanated from the one act and all constituted but one libel, if libel at all." It is difficult to see how a single cause of action, complete at one place, and fully accrued, can subsequently "accrue" in another place, or in many other places, for the purpose of acquiring a new venue, and yet without being a new and distinct cause of action—unless, of course, the statute is to be construed as meaning that the same cause of action reaccrues wherever its operation may be extended and results in additional damage or hurt. But that would be the accrual of additional damage merely, and not the accrual of a cause of action, as we shall show later on.

[1] If the mailing of copies of libelous newspapers from the county of their primary publication into other counties amounts to a republication merely—and no other theory seems available—then the law is well settled that the repetition or republication of the identical libel is not a new cause of action for which a separate suit may be maintained, but is merely an aggravation of the pre-existing cause, and in proper cases may tend to show actual malice. Murray v. Galbraith, 86 Ark. 50, 109 S. W. 1011, 126 Am. St. Rep. 1078; Galligan v. Sun, etc., Co., 25 Misc. Rep. 355, 54 N. Y. Supp. 471; Enos v. Enos, 135 N. Y. 609, 32 N. E. 123; 25 Cyc. 431.

We have examined the rules of the common law, and reviewed some of the more modern decisions, the general aspects and reasoning of which seem pertinent to the question here presented for decision; but those rules and authorities are useful only for comparison and analogy, and cannot be accepted as authoritative guides.

What we have to determine is, not what was the common law of venue in libel suits, but what is the statutory law of venue in Alabama, as prescribed by section 6112 of the Code:

"A foreign or domestic corporation may be sued in *any county* in which it does business by agent; but all actions for personal injuries must be brought in *the county* where the *injury occurred,* or in the county where the plaintiff resides, if such corporation does business by agent in the county of plaintiff's residence." (Italics ours.)

[2] 1. It is clear that the word "injury"—in the Latin, injuria—in the phrase "where the injury occurred," is used in its proper legal sense of wrong, importing, of course, a wrongful act or omission. "Damage," the result of the wrongful act—technically called the damnum—is a correlative term of wholly distinct meaning and application. The significance of the terms—"injury" and "damage"—is sharply contrasted in the familiar legal phrases, damnum absque injuria, and injuria sine damno. West Virginia Trans. Co. v. Standard Oil Co., 50 W. Va. 611, 40 S. E. 591, 56 L. R. A. 804, 88 Am. St. Rep. 895; Brown v. Kendall, 6 Cush. (60 Mass.) 292, 295.

The meaning we accord to "injury" in section 6112 is made clearer by a consideration of 6110, which is a general venue statute, and which authorizes the bringing of noncontractual personal actions either in the county of the defendant's residence, "or in the county in which the act or omission complained of may have been done, or may have occurred." Certainly, in enacting the later section (6112), the Legislature did not intend to change the basis of venue in tort actions from the county in which the wrongful act was done or occurred to the county, or any county, in which the resulting damage occurred, and to thereby effect so vital a change in actions only against corporate defendants, and for personal injuries only.

[3] It results that, under section 6112, the venue in this action must be laid in the county where the wrongful act—that is, the act violative of plaintiff's rights—was done. That act was, of course, the publishing of libelous matter in defendant's newspaper, "published at Birmingham"—so the complaint alleges, in accordance with the form prescribed by the statute for this action. Code, § 5382, form 17, p. 1197.

[4] 2. To "publish" a libel, in the sense of doing a civil wrong, is to make it known to any person other than the person libeled. To "publish" a newspaper at any place is, according to common understanding, to compose, print, issue, and distribute it to the public, and especially to its subscribers, at and from that place. It is significant, we think, that the Code form of complaint, in omitting (what was essential in a common-law complaint) allegation as to where the *libel* was published, substitutes therefor allegation as to where the *newspaper, book,* or *writing,* was published, thus indicating the legislative idea that the place where the vehicle of communication was published is, *ipso facto,* the place where the libel was published—necessarily one place and not many different places.

3. The statute (section 6112) in prescribing the first basis of venue in general, which may be in one county or in many, reads "in *any* county in which it does business by agent." But, with respect to the basis of venue here under consideration, it reads,

more restrictively, "in *the* county where *the* injury occurred"—not in *any* county where the injury occurred, nor in *any* county where the injury was *repeated or duplicated* merely. This is significant—highly significant we think—of a legislative conception of a single venue to be determined by the *locus* of a primary wrongful act; and not of a multitude of venues to be created by mere repetitions or secondary extensions of the primary act.

[5] 4. Where the terms of a statute do not indicate with reasonable certainty their intended application to particular cases, though their general intent and application are clear, they should be given such a construction as is conducive to fairness and justice, and in harmony with the general spirit and policy of the statute, rather than one which is offensive thereto, if that construction is reasonably consistent with the language used. We, of course, do not mean that, in construing statutes whose meaning is plain, courts are to be swayed by considerations of their hardship or injustice; but only that, where their language is so lacking in clearness and precision that they may in reason mean either one thing or another, the considerations of fairness, justice, and policy will be given weight in the ascertainment of legislative intent, and may even be decisive of that intent.

We do not see how there can be any conflict of opinion as to the unfairness, injustice, or impolicy of permitting aggrieved persons, in this class of cases only, to select at their pleasure any judicial forum within the state where the political, religious, industrial, moral, or personal predilections of the local citizenship may readily furnish a jury whose biased views will probably be reflected, however sincerely, in a verdict favorable to them.

This aspect of the question has been forcibly stated and discussed by Graves, J., in his dissenting opinion in Julian v. K. C. Star Co., 209 Mo. 35, 99, 107 S. W. 496, to which we have heretofore referred.

In this connection it is in point to observe that our venue statutes (sections 6110, 6112) have been in force since 1852 and 1886, respectively, and we may well apply the remarks of Graves, J., to that consideration:

"For fifty-two years this statute has been upon the books. The reports are full of libel suits. Lawyers of state renown have represented plaintiffs in these suits. No discovery that their clients possessed the unlimited right to select the forum—a valuable asset, indeed, to be hid away so long. It has remained for distinguished counsel in this case, in the role of a modern Columbus, to make this discovery, in a case possessing modern exigencies. The construction placed upon the statute by learned lawyers, prior to these modern exigencies ought to be of weight with the court in now construing the statute."

Summarizing our conclusions, as above indicated, we hold that in an action for libel against a newspaper the injury—the breach of duty—occurs, within the meaning and application of the venue statute, at the place where the newspaper is primarily published, and not in other places where it is secondarily published, that is merely circulated; that under the allegations of the pleas in abatement, the place of primary publication, and the locus of the injury, was Birmingham, in Jefferson county; and that this action could be prosecuted only in Jefferson county.

It results that the demurrers to pleas in abatement numbered 6, 7, and 8 were improperly and erroneously sustained.

The judgment of the trial court in that behalf will be reversed, and the cause remanded for further proceedings in accordance with this opinion.

As this ruling will probably dispose of the cause as now pending, we deem it unnecessary to consider the other questions presented by the numerous assignments of error.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN, THOMAS, and MILLER, JJ., concur.

SAYRE, J. (dissenting). It may be that the judgment in this cause should be reversed for errors in the admission of testimony; but, since the reversal is put upon one ground which destroys appellee's case and none other, I have not thought it worth while critically to investigate other grounds of alleged error. I am unable to concur in the opinion which has been written and will state my opinion with all possible brevity.

Section 6112 of the Code of 1907 provides that "all actions [against corporations] for personal injuries must be brought," in the county where the injury occurred," and more that is not of present consequence. The single question presented then is: What does the statute mean in cases of alleged libel? In view of our statute, the rule in other jurisdictions is of no authority, though the reasoning of the cases elsewhere may point the way to a correct decision here—and I understand it to be conceded that the weight of authority is against the prevailing opinion. That opinion begins by reciting the allegation of the complaint to the effect that the libel complained of was published "in a newspaper published at Birmingham," and upon that peg the conclusion is hung that suit could not be maintained in the county of Blount notwithstanding the alleged libel was published in the last-named county. But the printing of libelous matter in a newspaper, without more, is not the publication with which the law of libel concerns itself, for, in that law, as I presume will not be denied —is in fact conceded in the prevailing opinion—publication means the communication

of the libelous matter to some person other than plaintiff or defendant. There is no dearth of authorities, such as the courts are accustomed to follow. Thus, to cite a few of them, it was said at the Trial of the Seven Bishops, A. D. 1688:

"If a man write a libel in London and send it by post addressed to a person in Exeter, he is guilty of publication in Exeter." 12 St. Tr. 183.

And in 25 Cyc. 433, citing cases:

"The general rule is that an action for libel may be brought and tried in any county in which the libel is published or circulated."

And in 17 Ruling Case Law, § 120, p. 370:

"Civil actions for libel are transitory in their nature, and it is very generally held that such an action may be brought in any jurisdiction where the libelous article was published or circulated, even though the article was written or printed elsewhere."

And in note 5, 18 Am. & Eng. Ency. of Law, p. 1119, citing American, English, and Canadian authorities:

"It is not the place where the libelous article is printed, but the place where it is published and circulated, that makes the words used actionable."

Such publication with legal malice is of the essence of libel. Weir v. Hoss, 6 Ala. 881. It takes publication, in the limited sense indicated, to constitute the injury of libel. And in accordance with this principle it has been held—necessarily, I think—that the proprietor of a newspaper cannot be adjudged to have published a libel unless it is proved to have been read as well as printed. Youmans v. Smith, 153 N. Y. 214, 47 N. E. 265. Can there be any doubt, then, on the facts alleged, that the injury for which appellee seeks compensation occurred in Blount county? I think not. Nor is it of any consequence that the same injury may have been suable elsewhere. The prevailing opinion, in my judgment, concedes that the authorities sustain this view. That opinion, as I think, follows too closely a dissenting opinion in Julian v. K. C. Star Co., 209 Mo. 99, 107 S. W. 496, in holding the impolicy of the view taken by the authorities generally. In view of the plain language of the statute of this state, in which I am wholly unable to perceive any element of vagueness or uncertainty, such considerations are for the Legislature, not the court. If, however, such considerations are to be taken into account, it does not by any means appear that they weigh all on one side. It might be suggested, for example, that the author of a wrong of this character selects the places in which he will publish the libel. He does not con-

sult the feelings or the interests of the person wronged. His purpose, if he is guilty of libel, is to injure the person against whom his libel is directed. He may publish it in every nook and corner of the state. Speaking impersonally, not so much of this case in particular as of cases of the sort in general, may it not be asked wherein lies the anomaly or injustice of calling the wrongdoer to account in any jurisdiction in which he has committed the wrong? The courts generally hold there is none, and I would stand by the judicial rule, which in this case is also the rule of the statute as it now is, leaving the Legislature to change it, if unfair, unjust, or impolitic.

Reference has been made to the Code form (section 5382, form 17) which omits allegation as to where the libel was published, but does, in effect, declare the sufficiency of a form in which damages are claimed "for falsely and maliciously publishing of and concerning him [plaintiff] in a newspaper published at ——— called ——— (or book, or writing, as the case may be) the following," etc. I think nothing could be clearer than that the word "publishing," where it occurs in this form, means "publishing" as that term is used in the law of libel, and that the term "published," as applied to a newspaper, or book may be, means nothing more than "printed." Moreover, to refer to a form as defining the substantive law in respect of what constitutes venue in the case in which the form is used is, I submit, something new in this jurisdiction. And again, how will the rule of the majority opinion be applied to the case of a writing, for example, a letter or circular not printed in a newspaper or book? It cannot be done. And there ought to be one rule for all defendants alike. I think the pleas in abatement were bad, as the trial court held them to be, and that this appeal should be determined upon the merits of the cause.

GARDNER, J., concurs in the foregoing dissent.