Darcia M. FLEURY, Donald L. Fleury, Susan Adele Fleury, and Darleen Ann Fleury, Plaintiffs-Appellants,

v.

HARPER & ROW, PUBLISHERS, INC., a foreign corporation; Mannitou Enterprises Unlimited, Inc., a foreign corporation; and Linda Goodman, Defendants-Appellees.

No. 81–5830.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 7, 1982.

Decided Feb. 9, 1983.

Stanley Fleishman, Los Angeles, Cal., for plaintiffs-appellants.

Paul P. Selvin, Selvin & Weiner, Los Angeles, Cal., for defendants-appellees.

Before ELY and CHOY, Circuit Judges, and THOMPSON,* District Judge.

BRUCE R. THOMPSON, District Judge:

This is a diversity action for invasion of privacy, libel, intentional infliction of emotional distress and injunctive relief (stated in four separate claims for relief), arising from the publication by defendants of the book "Love Signs" authored by defendant Linda Goodman. The district court's jurisdiction was predicated on 28 U.S.C. § 1332(a). The appeal is from an order of the district court granting summary judgment for defendants, and a subsequent order denying a motion to alter or amend upon the ground that the causes of action are barred by the statute of limitation. Appellate jurisdiction is predicated on 28 U.S.C. § 1291.

The undisputed facts of record are that Harper & Row Publishers, Inc. intended that "Love Signs" would be a major publication for the 1978 Christmas trade. The author completed the manuscript by late summer 1978. Harper & Row in the spring or early summer of 1978 published its "Fall August through December 1978" list in which Linda Goodman's "Love Signs" was featured for release in November 1978. The August 28, 1978 issue of Publisher's Weekly, the professional journal for trade publishing, contained an announcement that "Love Signs" would be available in November 1978. The issue of the same magazine, dated November 13, 1978, which was placed in circulation approximately a week before the date on the publication, contained a review of "Love Signs" and announced its availability in November.

The release date for the book announced by Harper & Row was November 9, 1978. This was the date when the publisher ordered the release of the book in accordance with trade practice for distribution through shippers for delivery to dealers and distributors for sale. Shipments commenced from the warehouse situated in Scranton, Penn-

sylvania on November 10, 1978. On that date, approximately 10,000 copies were shipped, and by November 14, 1978, approximately 30,000 copies had been shipped from the warehouse to bookstores throughout the United States.

Books were displayed and on sale at the public bookstore in the Harper & Row Building, 10 East 53rd Street, New York City, on and after November 13, 1978. They were also displayed for sale in the major bookstores on Fifth Avenue before November 16, 1978. An author's party was held in the Harper & Row offices on November 14, 1978, which was attended by between 30 and 50 persons, many of whom received autographed copies of the book.

The shipping documents show a shipment of 50 books by air freight to Rochester, Minnesota on November 10, 1978. The bulk of the shipments were made by truck carrier. Deliveries to New York City are normally accomplished in one day. Shipments to the West Coast normally take about two weeks. By November 14, 1978, substantial shipments had been made to distributors and bookstores in New York, Michigan, California, Illinois and Florida.

There is no evidence that a copy of "Love Signs" had been received in California by November 16, 1978. The official publication date for the book, selected by the author Linda Goodman, was December 25, 1978, and this was the date given to the copyright office and the date used by most reviews of the book.

This action was commenced on November 16, 1979.

The parties identified three states whose laws might control the disposition of the case, Pennsylvania, New York, and California. All three have adopted the single publication rule, Pennsylvania and California by statute, and New York by court decision. Each of the three states has a one-year statute of limitation governing this type of action. The district court made no choice of

---

* Honorable Bruce R. Thompson, Senior United States District Judge, District of Nevada, sitting by designation.

law, opining that it was unnecessary inasmuch as the law of the three states is the same. This conclusion is not necessarily correct, however, inasmuch as Pennsylvania has interpreted its single publication statute to permit the plaintiff to select any delivery or sale of a book as the offending publication and collect damages for injuries to reputation suffered for one year thereafter. *Dominiak v. National Enquirer,* 439 Pa. 222, 266 A.2d 626 (1970). Hence, we deem it appropriate to make a choice of law.

In a diversity case the federal court must apply the conflict of law rules that the forum state would apply. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). California has adopted the "governmental-interest approach" in preference to the traditional dogma in tort cases of applying the law of the place where the tort was committed. The modern conflicts philosophy is elucidated in two opinions of the California Supreme Court: *Reich v. Purcell,* 67 Cal.2d 551, 432 P.2d 727 (1967); *Hurtado v. Superior Court of Sacramento County,* 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). *See also, Ashland Chemical Co. v. Provence,* 129 Cal.App.3d 790, 181 Cal.Rptr. 340 (1982). To make a choice of law the court examines the policy underlying the laws of the involved states to determine which states are "interested" in having their laws applied to the issue in question. A state will have an interest in having its law applied if the policies underlying the law would be thereby advanced. Libel and invasion of privacy are transitory torts to which the law of the forum will normally be applied absent a strong governmental interest of another jurisdiction. Pennsylvania is merely the state where the books were warehoused. None of the parties resides there and Pennsylvania has no interest in having its single publication rule applied to this case. California is the state where all the plaintiffs were domiciled throughout the transactions involved, and the state where the major damage to their privacy and reputations should have occurred. Inasmuch as it is the forum state, application of its laws is preferred. *Kasel v. Reming-*

*ton Arms Co.,* 24 Cal.App.3d 711, 101 Cal. Rptr. 314 (1972). Defendant Harper & Row has its place of business in New York City, and the state of New York has an interest in having its laws applied for the protection of its residents against multiplicity of suits and the pressing of stale claims, but inasmuch as the laws of the state of New York are identical with those of California, there is no reason to reject the law of the forum. Hence the laws of California are applicable to the resolution of this case. 12 Cal.Jur.3d, Conflict of Laws, § 19, pp. 498–500; Annot. 58 A.L.R.2d 650, 652 (1958).

*McGuire v. Brightman,* 79 Cal.App.3d 776, 145 Cal.Rptr. 256 (1978), is an instructive case involving the dissemination of a libel in South Dakota, where the plaintiffs resided. A default judgment was obtained in South Dakota after defendant had been served under South Dakota's long-arm statute. Enforcement of the judgment was sought by action in California and the issue presented was whether the South Dakota court had *in personam* jurisdiction of defendant. The court affirmed the validity of the South Dakota judgment and discussed at length the decision in *Anselmi v. Denver Post, Inc.,* 552 F.2d 316 (10th Cir.1977), saying in part:

> The court's first step in *Anselmi* was to examine Wyoming law. That examination revealed that Wyoming would probably not follow the single publication rule if the issue were presently raised. *Anselmi* took the further step, however, of asking whether, even assuming the single publication rule were applied in Wyoming, it would apply to preclude jurisdiction over out of state publishers sending libelous material into the forum state. Relying upon Judge Friendly's decision in *Buckley v. New York Post Corporation* (2d Cir.1967) 373 F.2d 175, the changes made to the Restatement, and other authority, the *Anselmi* court concluded that whatever the single publication rule's value in preventing multiplicity of actions and almost endless tolling of the statute of limitations, it would be improperly applied if used to prevent suit in the state

of the plaintiff's residence for libel appearing in a newspaper published in a distant state. This conclusion was further supported by the difficulty in reconciling use of the single publication rule with the long-arm statute for torts, since the essence of defamation is injury to the reputation of the plaintiff in his home area where he is known.

*McGuire v. Brightman, Id.* 145 Cal.Rptr. at 261–262.

Having concluded that the law of California governs this case, we are aided by the principle that substantial deference should be accorded the district judge's interpretation or construction of the law of the state in which he sits.

This standard was discussed in *Gaines v. Haughton,* 645 F.2d 761 (9th Cir.1981). The opinion reads, in part:

> Ordinarily, an appellate court can freely review questions of law. *Miller v. United States,* 587 F.2d 991, 994 (9th Cir.1978). However, when a federal court is in the position of interpreting state law with no definitive guidance from the state's highest court, *see Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967), we accord "substantial deference" to the district judge's interpretation or construction of the law of the state in which he sits. *Kabatoff v. Safeco Ins. Co. of America,* 627 F.2d 207, 209 (9th Cir.1980); *Associated General Contractors v. San Francisco Unified School District,* 616 F.2d 1381, 1384 (9th Cir.), *cert. denied,* 449 U.S. 1061, 101 S.Ct. 783, 66 L.Ed.2d 603 (1980); *Lewis v. Anderson,* 615 F.2d 778, 781 (9th Cir.1979), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980); *Mesa Oil*

*Co. v. Business Men's Assurance Co. of America,* 476 F.2d 491, 494 (9th Cir.), *cert. denied,* 414 U.S. 1003, 94 S.Ct. 358, 38 L.Ed.2d 239 (1973). The District Court's construction of state law will be accepted on review unless it is "clearly wrong" or "clearly erroneous." *Gee v. Tenneco, Inc.,* 615 F.2d 857, 861 (9th Cir.1980); *Owens v. White,* 380 F.2d 310, 315 (9th Cir. 1967).

*Id.* at 770. In the present case, the district court held that, under California law, the cause of action for libel accrued prior to November 16, 1978. This determination will be accepted on review unless it is found to be "clearly erroneous."

■ We have found no decision of the California Supreme Court bearing on the issues, and counsel have cited none. In cases where jurisdiction rests on diversity of citizenship, federal courts must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently. *Stoner v. New York Life Ins. Co.,* 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940); *American Triticale, Inc. v. Nytco Services Co.,* 664 F.2d 1136 (9th Cir.1981).

The Fleurys' libel claim is based on a discussion of their family life which appeared in the book "Love Signs." At common law each copy of this book would give rise to a distinct and separate cause of action, resulting in a multiplicity of suits and an almost endless tolling of the statute of limitation. 50 Am.Jur.2d, Libel and Slander, § 153 (1970). To prevent this, California has adopted the Uniform Single Publication Act, Civil Code 3425.1–3425.5.[1] The text of the California statute is identical with the uniform act proposed in 1952

---

1. § 3425.3. One cause of action; recovery

No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.

§ 3425.4 Judgment as bar

A judgment in any jurisdiction for or against the plaintiff upon the substantive merits of any action for damages founded upon a single publication or exhibition or utterance as described in Section 3425.3 shall bar any other action for damages by the same plaintiff against the same defendant founded upon the same publication or exhibition or utterance.

by the National Conference of Commissioners on Uniform State Laws, 14 U.L.A. 351 (1980), except that in Civil Code § 3425.3 the California legislature substituted the word "issue" for the word "edition." It has been said that this change was made in reliance upon the opinion of the New York Court of Appeals in *Gregoire v. G.P. Putnam's Sons,* 298 N.Y. 119, 81 N.E.2d 45 (1948).[2] *See,* 62 Am.Jur.2d, Privacy, § 46, p. 751 n. 4 (1972). In the *Gregoire* case it was held that an action commenced July 2, 1946 was barred by the one-year statute of limitation when the book in question was first published in November 1941, although there had been sales of sixty books from stock within the year preceding the action. The Commissioner's prefatory note to the uniform act states: "The intention is to adopt the rule as it has been developed at common law in the states which have accepted it." New York is one of such states.

■ In the case of a single, integrated publication, a cause of action accrues on the first general distribution of the publication to the public. *McGuiness v. Motor Trend Magazine,* 129 Cal.App.3d 59, 62, 180 Cal. Rptr. 784, 785 (1982); *Kanarek v. Bugliosi,* 108 Cal.App.3d 327, 332, 166 Cal.Rptr. 526, 529 (1980); *Johnson v. Harcourt, Brace, Jovanovich, Inc.,* 43 Cal.App.3d 880, 118 Cal. Rptr. 370, 382 (1974); *Belli v. Roberts Brothers Furs,* 240 Cal.App.2d 284, 49 Cal. Rptr. 625 (1966);[3] Cal.Practice Vol. 14,

§ 231:15; Annot., 42 A.L.R.3d 807 (1972); 6 Cal.Jur.3d, Assault and Other Wilful Torts, § 261, p. 464.

■ A cause of action for defamation does not arise until there has been an unprivileged publication of the libel to a third party. Restatement (Second) of Torts §§ 558, 577; Cal.Civ.Code § 45 (West); 6 Cal.Jur.3d, Assault and Other Wilful Torts, § 132, p. 337. The one-year limitation period applies to actions for invasion of privacy as well as for defamation. *Cain v. State Farm Mutual Automobile Insurance Company,* 62 Cal.App.3d 310, 132 Cal.Rptr. 860 (1976).

■ The district court held that the publication of "Love Signs" was a single, integrated publication which was generally distributed to the public by the shipment of thirty thousand copies from the warehouse in Pennsylvania by November 14, 1978, and their display, delivery, communication and sale in New York City on and before November 14, 1978. One need only ask himself the question: "If this action had been commenced on November 14, 1978, would it have been prematurely brought"? The obvious answer is "no," inasmuch as all the requirements for the accrual of the cause of action had been met on that date. Restatement (Second) of Torts, § 558.

---

**2.** "Recognizing that radical changes have been brought about by modern methods of disseminating printed matter for which there is a widespread demand, and desiring to avoid multiplicity of suits and to give effect to statutes of limitation, adjudicated cases disclose that within recent years courts of this State and other jurisdictions have ruled that the publication of a defamatory statement in a single issue of a newspaper, or a single issue of a magazine, although such publication consists of thousands of copies widely distributed, is, in legal effect, one publication which gives rise to one cause of action and that the applicable Statute of Limitation runs from the date of that publication. *Wolfson v. Syracuse Newspapers, Inc.,* 254 App.Div. 211, 4 N.Y.S.2d 640, affirmed 279 N.Y. 716, 18 N.E.2d 676; *Hartmann v. Time, Inc.,* Sup., 60 N.Y.S.2d 209, 210, 211, affirmed 271 App.Div. 781, 66 N.Y.S.2d 151; *Age-Herald Pub. Co. v. Huddleston,* 207 Ala. 40, 43, 92 So. 193, 37 A.L.R. 898; *Forman v. Mississippi Pub-*

*lishers Corp.,* 195 Miss. 90, 14 So.2d 344, 347, 148 A.L.R. 469; *Julian v. Kansas City Star Co.,* 209 Mo. 35, 71, 72, 107 S.W. 496; *Winrod v. Time, Inc.,* 334 Ill.App. 59, 78 N.E.2d 708; *Hartmann v. Time, Inc.,* D.C., 64 F.Supp. 671, 678–680; and see Id., 3 Cir., 166 F.2d 127, 133, 134; *McGlue v. Weekly Publications, Inc.,* D.C., 63 F.Supp. 744; *Cannon v. Time, Inc.,* D.C., 39 F.Supp. 660; *Backus v. Look, Inc.,* D.C., 39 F.Supp. 662; *Means v. MacFadden Publications, Inc.,* D.C., 25 Supp. 993." *Gregoire v. G.P. Putnam's Sons,* 81 N.E.2d at p. 47.

**3.** "It has generally been held that, in the case of a single, integrated publication, the cause of action based upon objectionable matter appearing in the publication accrues upon the first general distribution of the publication to the public." *Belli v. Roberts Brothers Furs,* 49 Cal.Rptr. at p. 629.

■ The district court also held that the continued printing of the book into 1979 was part of the single, integrated publication. Appellants contend that the new printings were a republication. This argument is without merit. If all printings were part of the first hardcover edition of the book, the printings are a single publication. *Kanarek v. Bugliosi, supra.* This result is particularly clear in California where the word "issue" was substituted for "edition" to accomplish this particular result. *Belli v. Roberts Brothers Furs, supra; Gregoire v. G.P. Putnam's Sons, supra;* Eldredge, The Law of Defamation, § 38, n. 36, at p. 213 (1978).

■ Plaintiffs contend that they are entitled to rely on December 25, 1978, the date selected by the author, as the date of publication, and that defendants are "estopped." This is not the law. The precedents with almost complete uniformity hold that publication occurs at the time of actual communication of the libel, not the date on the cover of the newspaper, magazine or other printed matter. *McGuiness v. Motor Trend Magazine, supra; Belli v. Roberts Brothers Furs, supra.*

■ Plaintiffs also suggest that the correct rule should be that the cause of action does not accrue until communication of the libel in the place of plaintiffs' residence where the damage impact is greatest. California has rejected this suggestion. *McGuiness v. Motor Trend Magazine, supra,* was an action where communication of the publication only in Florida, Iowa, New Jersey and Washington was proved, yet the action by the California plaintiff brought on July 29, 1976 was held barred by limitations because of distribution to subscribers in those states on and prior to July 22, 1975.

It is also the California rule that the statute of limitations will run on a libel action even if plaintiff does not realize that he has been defamed. *Johnson v. Harcourt, Brace, Jovanovich, Inc., supra.*

Plaintiffs believe that the Pennsylvania Supreme Court in *Dominiak v. National Enquirer, supra,* has given the most thoughtful and defensible interpretation to the single publication statute. We do not agree. In the first place, the Pennsylvania court ignored the difference between the word "action" and the phrase "cause of action" and viewed the single publication act as if it says: "No person shall have more than one action for damages for libel, or slander or invasion of privacy" in preference to the correct text: "No person shall have more than one *cause of action* for damages, etc." (emphasis supplied). Secondly, the Pennsylvania decision ignores the second of the two prime reasons for the single publication rule: to avoid multiplicity of actions and to stop the endless tolling of the statute of limitations. If we read *Dominiak* correctly, the statute of limitations never runs so long as there is a new communication of the libel. This interpretation emasculates the rule.

Plaintiffs also have argued in the district court and here that the "rule of discovery" inures to their benefit, that is to say, that "the cause of action does not accrue until a plaintiff knows, or should know, all material facts essential to show the elements of that cause of action." *Neel v. Magana, Olney, Levy, Cathcart & Gelfaud,* 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421, 430 (1971). Reliance is placed upon *Cain v. State Farm Mutual Automobile Insurance Company,* 62 Cal.App.3d 310, 132 Cal.Rptr. 860 (1976), a right of privacy case, and *Manguso v. Oceanside Unified School District,* 88 Cal.App.3d 725, 152 Cal.Rptr. 27 (1979), for application of the rule of discovery to the instant case. This same proposition was placed before the court in *McGuiness v. Motor Trend Magazine, supra.* Neither *Cain* nor *Manguso* involved the interstate communication of a libel implicating the single publication act, and the *McGuiness* court had little difficulty in rejecting the rule of discovery, finding it inapplicable to this type of case.[4]

4. "Plaintiff next contends that a 'rule of discovery' should apply, citing *Manguso v. Ocean-*

*side Unified School Dist.,* 88 Cal.App.3d 725, 728–731, 152 Cal.Rptr. 27, and *Tom Olesker's*

On appeal the plaintiffs say that the California Code of Civil Procedure, § 340(3), as construed by the court, denied them due process of law because the statute began to run against them when they did not know and could not know of the publication of the book. This contention was not made in the district court, not even on plaintiffs' motion to alter or amend the judgment (from which the appeal was taken), and will not be considered for the first time on appeal. *Hormel v. Helvering,* 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); *Frommhagen v. Klein,* 456 F.2d 1391 (9th Cir.1972); *Hammerquist v. Clarke's Sheet Metal, Inc.,* 658 F.2d 1319 (9th Cir.1981).

Finally, on an overall basis and in support of each of the contentions of fact and law that have been discussed, plaintiffs insist that the least that can be said is that the factual posture of this case presents disputed issues of material fact which precluded the entry of a summary judgment. They argue, in substance, that the issue "When did plaintiffs' cause of action accrue?" is the issue of fact which a jury is entitled to determine. *See, Budd v. Nixen,* 6 Cal.3d 195, 98 Cal.Rptr. 849, 491 P.2d 433 (1971). This implies that all the facts which have been recited, including, for examples, the author's selection of December 25th as the publication date, the absence of proof of any communication of the libel before November 16th in the geographic area of plaintiffs' residence, the printing of additional copies of the first issue of the book in early 1979, and all the other undisputed facts, should be given to the jury in a bundle to let the jury decide if the statute had run. This cannot be correct. We repeat, all the evidentiary facts are without material dispute in an extensive record. Under these circumstances, the question of when the cause of action accrued, is a question of law. We have given the reasons why under California law, if this same evidence should be presented to a jury, the duty of the court would be to direct a verdict for the defendants because of the bar of the statute of limitations.

Affirmed.

*Excit. W., etc. v. Dun & Bradstreet, Inc.* (1975) 61 Ill.2d 129, 334 N.E.2d 160. These cases are readily distinguishable. In *Manguso* the libel was in a letter which was placed by a supervisor in the plaintiff's confidential permanent personnel file, of which the plaintiff did not learn for 16 years. In *Olesker,* the libel was a credit report distributed to a subscriber on a confidential basis. In those cases the libel was committed in an inherently secretive manner. They have no application to a public libel in a nationally distributed magazine widely available to the public, including the plaintiff. Unlike *Manguso* and *Olesker,* there was no concealment of the defamation. (*Johnson v. Harcourt, Brace, Jovanovich, Inc.,* 43 Cal.App.3d 880, 896, 118 Cal.Rptr. 370.)" *McGuiness v. Motor Trend Magazine,* 180 Cal.Rptr. at p. 786.