WOODALL, Justice
(dissenting).
The majority accurately summarizes Windom’s contentions regarding whether the “act or omission complained of’ occurred in Walker County:
“... Windom contends that Tvey has not shown and cannot show that Windom originally published any alleged defamatory statement in Walker County.’ Petition at 4. He states: ‘The various quotes attributed to Windom in [the] articles were made by Windom in Mobile or Montgomery Counties — not Walker County.’ Id. He contends that the phrases ‘MOBILE (AP)’ and ‘MONTGOMERY (AP),’ appearing before the text of the news reports on which Ivey relies, prove that the news reports in the Eagle were merely reprints of reports by the Associated Press (‘AP’) and, consequently, that they were not ‘originally published’ in Walker County. ‘The only acts or omissions which occurred in Walker County were,’ he insists, ‘the Jasper newspaper’s decisions to republish the stories off of the AP wire. These acts or omissions,’ he concludes, ‘cannot be attributed to [Windom].’ Petition at 7. Similarly, citing Ex parte Wilson, 408 So.2d 94 (Ala.1981), he contends that the ‘mere repetition of a libel ... does not give rise to venue in the county of repetition.’ Windom’s Reply to Ivey’s Supplemental Brief and Answer at 5.”
840 So.2d at 888.
Ivey contends that the Associated Press (“AP”) prefixes do not prove that the Eagle articles were mere reprints of AP reports. Thus, the parties dispute the significance of the AP prefix. However, I deem the AP prefix immaterial to the disposition of this case, because when “ ‘the *891 second publication is a natural and probable consequence of the first, the initial publisher is responsible for it.’ ” Barnette v. Wilson, 706 So.2d 1164, 1166 (Ala.1997) (quoting Davis v. National Broadcasting Co., 320 F.Supp. 1070, 1072 (E.D.La.1970)). “ ‘ “Where there were circumstances, known to the original defamer at the time of his publication that might reasonably lead him to expect a repetition, he is responsible for it.” ’ ” Id.
Taken to its logical conclusion, Windom’s argument would preclude liability for a “second-tier publication.” Under his argument, one who utters defamatory material in a press conference in Montgomery County could not be hable for the reprinting of wire-service reports of those remarks by a newspaper printed in any other county. This argument ignores the realities of the “cyber age.”
It is commonly known that newspapers — especially small newspapers — rely on the reports of large, reputable, news-gathering agencies, such as the AP, for much of their information. See Appleby v. Daily Hampshire Gazette, 395 Mass. 32, 38, 478 N.E.2d 721, 725 (1985). “Wire services, originally named for their operation over telegraph wires, grew to meet the needs of newspapers in various parts of the country. By subscribing to wire services, newspapers could take advantage of the manpower and finances of large services, which could afford to send reporters to myriad locations.” James E. Boasberg, With Malice Toward None: A New Look at Defamatory Republication and Neutral Reportage, 13 Hastings Comm. & Ent. L.J. 455, 457 (1991). “Without these services, even large papers would be vastly restricted in what they could report, since no paper could support a bureau in every state or a reporter in every foreign country. Small papers would likely be confined to reporting purely local news.” Id. at 457-58. Indeed, we judicially know that news reports of matters of statewide interest routinely reach many areas of Alabama through second-tier reporting, such as that involved in this case.
When a candidate for a statewide political office convenes a press conference to present his version of events that bear directly on the viability of his candidacy, he is not only aware of the nature of the reporting system, but he is also relying on it. He should not be heard to complain if he is subsequently called to defend his version of the story in counties other than the one in which his remarks were first made or printed. Undoubtedly, Windom’s remarks at the September 14, 1998, press conference and his choice of the forum for those remarks were calculated to reach as many Alabama voters as possible, including those in Walker County. He should not be heard to complain, therefore, when he is called to Walker County to defend his remarks, which were reproduced there in a second-tier report.
This rule would not, as Windom argues, establish statewide venue for defamation actions against individuals. His argument would have more appeal if an individual was subject to being sued in any county in which a newspaper was circulated. However, this Court has held that in a defamation action against an individual, based on the publication of allegedly defamatory material in a newspaper, the “act or omission” for venue purposes is the printing, not the circulation, of the allegedly defamatory material. Ex parte Arrington, 599 So.2d 24 (Ala.1992).
Arrington involved a complaint filed in Shelby County by Leon Kelly against the then mayor of Birmingham, Richard Ar-rington, alleging that a newspaper article written by Mayor Arrington and printed in the Birmingham News and the Birmingham Times defamed Kelly. Id. at 25. *892 Kelly conceded that had he sued the “corporate newspaper publisher rather than the author of the newspaper column, venue would have been proper only in Jefferson County, pursuant to Ala.Code 1975, § 6-3-7, which provides for actions against corporations ‘in the county where the injury occurred.’ ” 599 So.2d at 25 (emphasis in Arrington). This Court recognized no such distinction, but construed § 6-3-2(a)(3) as laying venue for actions against the individuals who supplied the newspaper with the defamatory statements in the county in which the newspaper is printed, not in counties in which the newspaper is merely distributed. 599 So.2d at 26.
Like Kelly, Windom concedes that, had Ivey sued the Eagle for printing Windom’s remarks, venue might be proper in Walker County. Petition at 5. Arrington clearly refutes any such distinction. Moreover, Arrington’s county-of-printing limitation thoroughly refutes Windom’s statewide-venue argument. Thus, as established in Arrington, the “act or omission” on which venue in Walker County is based is the culmination of that chain of events, namely, the printing of Windom’s remarks, that was set in motion by the press conference convened in Montgomery.
Finally, contrary to Windom’s argument, Ex parte Wilson, 408 So.2d 94 (Ala.1981), does not stand for the proposition that the “repetition of a libel ... does not give rise to venue in the county of repetition.” Unlike the defendant in Arrington, the defamation defendant in Wilson was the corporate newspaper. The venue issue in Wilson involved the distinction between “damages” and “injury,” an issue not involved in this case. Specifically, the Court stated:
“Code of 1975, § 6-3-7, provides that an action against a domestic corporation for personal injuries may be commenced in the county where the injury occurred. Petitioner claims that the injury to his reputation occurred in Hale County, the county in which he resides. In Age-Herald Publishing Company v. Huddleston, 207 Ala. 40, 92 So. 193 (1921), however, we held that ‘in an action for libel against a newspaper the injury— the breach of duty — occurs, within the meaning and application of the venue statute, at the place where the newspaper is primarily published, and not in other places where it is secondarily published, that is merely circulated.’ Id. at 45, 92 So. at 198. Thus, although the libelous damage may accrue in separate counties, the injury happens in only one county, the county of original publication. The evidence in the present case reveals that The Post Herald is printed and published in Jefferson County. The trial court did not err, therefore, in finding that the injury occurred in that county alone.”
408 So.2d at 96 (some emphasis added; some emphasis original). Thus, within the context of the issue involved in Wilson, the phrase “secondarily published” refers, not to the “county of repetition,” as Windom contends, but to mere circulation as opposed to printing. Wilson is not authority for.limiting venue to the county in which allegedly defamatory material is first printed, when the material is subsequently reprinted throughout the state by various newspapers.
In summary, this Court should hold that venue is proper in Walker County, pursuant to § 6-3-2(a)(3), based on the fact that the newspaper containing allegedly defamatory statements uttered at a press conference outside Walker County was printed in Walker County, regardless of whether the statements were reprinted from an AP news-service report first printed or published in another county. I am convinced that the trial court did not err in denying *893 Windom’s motion to transfer the action to Mobile County. Therefore, the writ should be denied. For these reasons, I respectfully dissent.