## 10850.   HIGDON v. BELL.

JENKINS, P. J.   1. While any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk, or exposes him to greater liability, will discharge the surety (Civil Code of 1910, § 3544), the mere fact that the holder of a note in good faith accepts payment thereof from the maker at a time when the maker is insolvent, so that such payment is voidable in the event of the maker's bankruptcy, and is thereafter actually avoided by his

trustee or voluntarily surrendered to the trustee by the holder, will not discharge the note or release a surety thereon. That the creditor, at the time such payment was made and accepted, may have known of the maker's insolvency will not alter the rule; for there might never be any bankruptcy proceeding instituted against the maker, and in that event the payment would be a valid one; and a refusal upon the part of the creditor to accept it might in fact release the indorsers. Harner *v.* Batdorf, 35 Ohio St. 113; Second National Bank *v.* Prewett, 117 Tenn. 1 (96 S. W. 334, 119 Am. St. R. 987, 9 L. R. A. (N. S.) 581, and note). The excerpt from the charge of the court complained of in the 5th special ground of the motion for a new trial, being in substantial accord with the ruling here announced, is not erroneous.

2. Nor would failure of the holder of the note to prove his debt in bankruptcy against the principal debtor, after having surrendered such a payment as that referred to above, operate to discharge the surety. This is true for the reason that the creditor's mere non-action or failure to prosecute with vigor his legal remedies will not release the surety, unless based upon a consideration paid by the principal debtor to the creditor, or unless the creditor is notified under the statute to collect the debt. Civil Code (1910), § 3544; *Jordan* v. *Farmers & Merchants Bank*, 5 *Ga. App.* 244 (5) (62 S. E. 1024); Yerxa *v.* Ruthruff, 19 N. D. 13 (120 N. W. 758, 25 L. R. A. (N. S.) 139, 141, and note); *Lumsden* v. *Leonard*, 55 *Ga.* 374; *Williams* v. *Kennedy*, 134 *Ga.* 339, 344 (67 S. E. 821); *McMillan* v. *Heard National Bank*, 19 *Ga. App.* 148, 153 (91 S. E. 235).

3. While, under the provisions of the Civil Code (1910), § 3566, "A surety suing for contribution must first account for all money or other thing received from the principal to indemnify him against loss," under the evidence adduced upon the trial of this case the jury were authorized to find that the plaintiff had in fact accounted for everything of value that he had received; and under the rulings announced in this and the two preceding paragraphs, the 1st, 2d, 3d, 4th, and 7th grounds of the amendment to the motion for a new trial, which are merely amplifications of the general grounds, are without merit.

4. At common law contribution could be enforced only for the aliquot share of each, reckoned as if all were solvent (13 C. J. 825, § 10; *Hall* v. *Harris*, 6 *Ga. App.* 822, 826, 65 S. E. 1086), and the doctrine of the common law, not expressly repealed by statute, is still of force in this State. Park's Ann. Code, § 1 (3), and note; *Westmoreland* v. *Powell*, 59 *Ga.* 256 (3). The only amendment or modification of this common-law rule, governing the amount which each of the cosureties must contribute to the one who has paid more than his equal share of the indebtedness, is found in the Civil Code (1910), § 3564, which provides that "If one of the cosureties be insolvent, the deficiency in his share must be borne equally by the solvent sureties." While the opinion in the case of *Hall* v. *Harris*, supra, contains the following quotation from 9 Cyc. 800: "Each co-obligor is liable to contribute in proportion to his share of the common debt or obligation, but in determining the

proportion which a debtor should contribute, regard will be had to only the solvent debtors, *and to those within the jurisdiction of the court called upon to enforce contribution*" (italics ours), and while this appears to be the rule in some jurisdictions, such, under the doctrine of the common law as of force here, is not the rule in this State; and the statement quoted, that regard will be had only " to those within the jurisdiction of the court called upon to enforce contribution," was merely obiter, since no such question was involved in that case.

(a) In this case there was no evidence whatever tending to show that the non-resident surety was insolvent, and the court therefore erred in charging the jury as complained of in the 6th special ground of the motion for a new trial. The verdict in favor of the plaintiff against the defendant, who was one of the three sureties, being for $973.35 principal and $545.06 interest, one half of the amount paid by the plaintiff in discharge of the principal's indebtedness, together with interest thereon, is therefore contrary to law; but if the plaintiff will, at the time the remittitur is made the judgment of the court below, write off from the judgment rendered the sum of $506.14, thus reducing the judgment to $1,012.27, principal and interest, or to one third of the amount paid by the plaintiff, together with interest thereon, there being sufficient evidence to authorize a verdict for the plaintiff for that amount, the judgment will stand affirmed; otherwise it is reversed. It is further ordered that the costs of the writ of error be taxed against the defendant in error.

*Judgment affirmed, on condition. Stephens and Smith, JJ., concur.*

DECIDED MARCH 11, 1920.

Complaint; from Grady superior court — Judge Harrell. June 25, 1919.

The Higdon Trading Company, a corporation of the State of Florida, executed a promissory note for $2,000 to the Dutton Bank of Gainesville, Florida, indorsed by the plaintiff W. S. Bell and T. J. Terry, residents of that State, and by the defendant, Joe Higdon, a resident of Grady county, Georgia. When the note became due it was protested for non-payment, and on demand the plaintiff paid to the bank the principal sum of $2,000 and $21.60 interest and took up the note, and this suit was brought in the superior court of Grady county to recover a half of the amount thus paid, with interest thereon, less a credit of $75 which the plaintiff had realized from certain collateral. From the evidence on the trial it appeared that shortly after paying the note, the plaintiff received from the maker certain live stock, goods, and merchandise of the value of about $1,500, and notes and mortgages aggregating about $2,600, constituting assets of the corporation,

which were to be applied by the plaintiff to his reimbursement as realized upon; that afterwards the Higdon Trading Company was adjudicated a bankrupt, and, in settlement of proceedings in the bankruptcy court to recover of the plaintiff the assets turned over to him by the bankrupt, he paid to the trustee in bankruptcy $900, which he testified represented all he ever realized from the sale of the property turned over to him by the bankrupt. He testified that the only sum realized from the notes and mortgages was the $75 credited on the note, and that the remainder of the notes and mortgages turned over to him were worthless, being either barred by the statute of limitations when he received them or against insolvent persons, and therefore uncollectable. The verdict was in favor of the plaintiff, for the full amount sued for. The defendant made a motion for a new trial, contending therein that the verdict was contrary to law and the evidence, for the reason that the act of the plaintiff, which was without the defendant's knowledge or consent, in demanding and receiving from the maker of the note $4,000 worth of its assets, rendered the maker insolvent, and caused it to commit an act of bankruptcy, thereby increasing the defendant's risk as surety and exposing him to greater liability, and that he was therefore discharged from liability; that the $4,000 worth of assets were delivered by the maker of the note to the plaintiff in payment of the note, and the defendant was thereby discharged from liability to make contribution; that the plaintiff failed to account to the defendant for any of the property received by the plaintiff, and therefore could not maintain the present suit for contribution; and that the failure of the plaintiff to prove his claim against the bankrupt's estate, after having surrendered to the bankruptcy court the value of the property received by him, increased the defendant's risk as cosurety and discharged him.

In the 5th special ground of the motion for a new trial the defendant excepts to the charge of the court to the effect that if the maker of the note, while insolvent, paid to the plaintiff any amount, either in goods or money, as a payment on the note, and the plaintiff was thereafter compelled to pay over to the bankrupt court any such amount thus received from the maker, the amount so paid should not be credited as a payment on the note, and would not release or discharge the indorsers from their liabilit:

to contribute to the plaintiff. In the 6th special ground the defendant excepts to the charge of the court to the effect that if the jury should find that T. J. Terry resided without the State of Georgia, the fact that he may have been an indorser on the note should not be considered by the jury in determining what would be the liability, if any, of Higdon to contribute to the plaintiff. The court overruled the motion for a new trial, and the defendant excepted.

*Titus, Dekle & Hopkins, Ledford & Christopher,* for plaintiff in error.

*Chris Mathewson, Bell & Weathers,* contra.