22368.   LEAVY *v.* THE STATE.

Decided September 1, 1932.

J. T. *Colson, C. H. Leavy Jr., Tyson & Tyson,* for plaintiff in error.

O. C. *Darsey, solicitor,* contra.

Luke, J. █ It appears from the accusation in this case that P. J. Varner, as prosecutor, charges that on June 21, 1931, in McIntosh County, C. H. Leavy "did . . express by printing the same and causing the same to be printed in a newspaper printed and published in the City of Brunswick, Glynn county, Georgia, and known as the Brunswick News, the following defamatory language and words at, of, and towards the said P. J. Varner, as follows, to wit:" The accusation then sets out fully the article in question, the substance of which appears from the following:

"A Deplorable Incident.

"Georgia to-day is endeavoring to attract new industry, finance, commerce and home-seekers to this State, and during the past several years rapid strides have been made towards that end, but such actions as taken by the McIntosh County officials against Howard E. Coffin and the Sea Island Company do nothing but throw a damper on what has already been accomplished and what is being planned for the future. The McIntosh County officials have seen fit to attack Mr. Coffin and the Sea Island Company for alleged failure to make tax-returns on certain properties to the county during a three-year period, and the case involves several thousand dollars. However right as the officials might be in accusing Mr. Coffin and the Sea Island Company, there is a more serious phase of the affair to be given due consideration, and that is the renewal of an old feud between a former employee of the company

and now a leading citizen of the McIntosh County community. The affair has been brewing for many months. Mr. Coffin and the Sea Island Company have been expecting such action to be taken, and it is all the direct result of the prejudiced feeling of an old employee of the Sea Island Company, working behind a veil of vengeance. To those who do not understand the entire affair, which dates back over a long period, it appears on the surface as a case of tax evasion, and puts Mr. Coffin and the Sea Island Company in an embarrassing position. Such is not the case, and it is not one where justice is being sought through legal channels, but is the manipulation of a scheme by a former official of the Sea Island Company, apparently endeavoring to do harm wherever and whenever possible. The McIntosh officials have made a grave error in entering such action against Mr. Coffin and the Sea Island Company. . .

"McIntosh County was the first Georgia home of Howard E. Coffin. . . In Glynn county he had centered other developments, and between the two counties . . he has expended more than $7,500,000 on the development and improvement of Coastal Georgia, . . he has opened a new era in the progress of the State. Howard E. Coffin, a native of Michigan, . . has done more for Georgia during the past ten years than any other citizen. . . His motives have been unselfish. . . The character, ability, and business administration of Mr. Coffin speaks for itself, . . and it is a most deplorable state of affairs when one county which he has always befriended and aided in its development brands him in the courts as a criminal and tax-evader,—all because of the designs of one vengeance seeker poisoning the minds of the county officials against the man who secretary of war Baker declared has done more for the United States during the past fifty years than any other individual.

"The steps taken by the McIntosh County authorities are far-reaching, and are not confined strictly to Coastal Georgia regions. . . The cases are not in the courts. McIntosh officials have completed their action, but they are not the deciding factor in the affair, and once it reaches the trial judge there is a great possibility it will be tossed out of court. . . The whole situation places Georgia and Coastal Georgia in an unfair position, and it ought to be condemned by all right-thinking people."

It is alleged that "said defamatory language was read and published in McIntosh County, Georgia, on June 21 and June 22, 1931, the same tending to blacken the honesty, virtue, integrity, and reputation of the said P. J. Varner, and thereby exposing him to public hatred, contempt, and ridicule, the said C. H. Leavy being the editor and publisher of said Brunswick News. . ."

The demurrer to the accusation was as follows:

"1. Said accusation does not allege on the part of this defendant the commission of any crime, misdemeanor, or offense under the laws of Georgia.

"2. That the allegations are too vague, uncertain and indefinite as to charge the defendant with a violation of any penal statute.

"3. The printed article complained of . . is an article commenting without malice, but with regret, upon a matter of both general and local public interest.

"4. The said accusation fails to allege or show or charge that this defendant was the author of the said article . . and claimed to be libelous, and that this defendant had refused to give up the name of the author or person causing the publication before he can be indicted as such.

"5. Said accusation invades the constitutional right of newspapers to deal with all matters of public interest, and which constitutional rights are guaranteed to the press under the constitutions of Georgia and of the United States.

"6. That said alleged published matter was privileged communication, for that the same were comments upon the act of public men in their public capacity, and with reference thereto."

The trial judge overruled the foregoing demurrer, and proper exceptions to this ruling were filed.

The accusation is drawn under section 340 of the Penal Code (1910), which reads as follows: "A libel is a malicious defamation, expressed either by printing or writing, or signs, pictures, or the like, tending to blacken the memory of one who is dead, or the honesty, virtue, integrity, or reputation of one who is alive, and thereby expose him to public hatred, contempt, or ridicule. Every person convicted of this offense shall be punished as for a misdemeanor." The accusation alleges that the alleged defamatory matter was printed and published "at, or, and towards the said P. J. Varner;" that it was published in a newspaper of which C. H.

Leavy was editor and publisher; and that it tended to "blacken the honesty, virtue, integrity and reputation of the said P. J. Varner, and thereby exposing him to public hatred, contempt and ridicule." The accusation is set out above, and it would be useless to restate the substance of the published article. We are satisfied that the court properly overruled the demurrer.

It appears from the first special ground of the motion for a new trial (numbered 4), that at the beginning of the trial, and in the presence of the jury, the State added a second count charging the defendant with barratry; that "defendant filed a demurrer to said count, and the question therein involved was discussed in the presence of the jury;" that the court overruled said demurrer in the presence of the jury, and that "the solicitor in his opening to the jury, before the introduction of evidence, discussed at length the guilt of the defendant under the alleged charge of barratry;" that when the evidence closed, the judge had the jury to retire, and announced that he would withdraw his former judgment, and would sustain said demurrer, and that counsel should confine their argument to the first count of the accusation; and said second count was not read to the jury, and was not sent out to the jury-room. It is averred in this ground that "the court erred in failing to instruct the jury as to the elimination of the barratry count." It appears that the judge charged the jury fully upon the first count, and that he said nothing whatever that could possibly lead the jury to believe that they were to consider the count which had been eliminated. In the circumstances set out in the ground, we do not think it at all probable that the jury considered the second count. Moreover, counsel appear to have been satisfied with the manner in which the court handled the matter. They had ample time to request the court to tell the jury at once, and in so many words, that the second count was not to be considered, or to request a charge to that effect. We do not think that the defendant could, under the circumstances, sit quiescent, and apparently acquiescent, and take his chance of acquittal, and then, after an adverse verdict, raise for the first time the question sought to be made in the ground.

Since special grounds 5 and 6 raise the same question, and since that question clearly appears from the latter ground, we shall consider the following charge of the court which is complained of

in ground 6: "Editors of newspapers take full responsibility of all editorials published in the newspaper of which they are editor. In other words, the editor of a paper publishes the editorials of that paper at his own peril. If, then, the editorial in fact is libelous, the editor is charged with it under the law. Now, whether or not the editorial in this case is libelous, and whether or not it is malicious, and whether or not it referred to Mr. Varner, are all questions of fact for you to determine." The criticism of this charge is as follows: "Movant says that the said charge was an incorrect statement of the law of criminal libel, and relieved the State of that burden in criminal cases of establishing that the defendant committed the criminal act, or that it was done by his direction or knowledge." We quote from 3 Chitty's Criminal Law, 870, as follows: "The party who writes a libel dictated by another, and has discretion to understand its nature—he who originally procures it to be composed—he who actually composes it—he who prints it or procures it to be printed—he who publishes or causes it to be published, all, in short, who assist in framing or in diffusing it, are implicated in the guilt of the offense." We next quote from 18 Am. & Eng. Enc. of Law (2d ed.), 1065, as follows: "The manager or editor of a newspaper is liable for a libel published in it, because his supervision of the matter which appears in the paper is of such a nature that without his consent or neglect of his ordinary duties a libel can not appear therein." We are satisfied that the court laid down a correct rule of law in the charge, and we hold that grounds 5 and 6 are not meritorious.

■ Special grounds 7 to 25, inclusive, largely relate to objections to evidence concerning transactions between the prosecutor and the Sea Island Company or Howard Coffin, and several of them have reference to documentary evidence the substance of which is not set out in the grounds. In nearly every instance the evidence was admitted over the objection that it was irrelevant and immaterial. We have carefully examined these grounds, and have reached the conclusion that, since in a way the case arose out of dealings between the prosecutor and Howard Coffin and the Sea Island Company, those grounds which are in proper form for consideration are not meritorious.

■ The last special ground (numbered 26), avers that the court erred in charging the jury as follows: "On the other hand, it is

the contention of the defendant that the editorial was not libelous, and therefore he denies his guilt." The complaint is, that, in so charging, the court "limited the jury in its consideration of the case to the one proposition laid down by the court, and eliminated from the jury any and all other defenses by the defendant." In the first place, this ground is incomplete, in that it does not state what other defenses the charge eliminated. In the second place, the defendant introduced no evidence, and such defenses as he made arose out of his statement to the jury, and there was no request to charge. In the third place, the court charged fully and in detail the various things that the State had to prove in order to procure a conviction. We are satisfied that there is no merit in this ground.

■ In regard to the general grounds, we will say that the jury was warranted in concluding, from the State's evidence, that the article in question referred to the prosecutor in the case; and from the article itself that it was malicious. We quote briefly from the defendant's statement to the jury: "The newspaper which I am publishing was founded by myself more than thirty years ago. . . In explanation of this article, I might say that if I had sat down and written this article myself, it might have been written in a different language. I tell you frankly I didn't write it. I told a subordinate to write it, but I am responsible for it." Apparently, in order to show his kindly feeling towards the prosecutor and the absence of malice towards him, the defendant stated that on a former occasion, and at P. J. Varner's request, he had instructed his reporters to write a certain article in such a way as to be innocuous to Varner, and had submitted said article to Varner before it was published. We hold that the evidence supports the verdict, and that the court did not err in overruling the general grounds of the motion for a new trial.

■ Before concluding this opinion, we shall advert briefly to the contention of plaintiff in error that the venue was not proved, for the reason that the Brunswick News was published in Glynn county, and the prosecution was in McIntosh county, where that newspaper circulated. It is averred that the question of venue was raised by paragraph 1 of the demurrer to the indictment, which is as follows: "Said accusation does not allege on the part of this defendant the commission of any crime, misdemeanor, or offense under the laws of Georgia." We do not concur in this contention.

The demurrer does not mention venue, and it nowhere appears from the record that the question sought to be raised was ever presented to the trial judge. We quote from the act of 1911 (Ga. L. 1911, p. 150) as it appears in Park's Penal Code (1910), § 1101 (a): "No judgment of a trial court in a criminal case shall be reversed by either the Supreme Court or the Court of Appeals for lack of proof of venue or of the time of the commission of the offense, save where the particular point has been specifically raised by a ground of the original or amended motion for a new trial." In our opinion the question of venue has not been properly raised. However, the general rule in such cases is laid down in 17 R. C. L. 464, § 227, in this language: "It is generally held that a criminal prosecution for libel may be instituted in any jurisdiction where the libelous article was published or circulated, irrespective of where such article was written or printed." We are aware of the fact that in Florida and a few other states the rule is otherwise, but we think that the foregoing general rule is the proper one; and, even if it were granted that the question under consideration was properly raised, we would shape our ruling in accordance with the rule quoted.

In conclusion, we hold that the record discloses no valid reason for disturbing the judgment of the trial court.

*Judgment affirmed. Broyles, C. J., and Hooper, J., concur.*