40617. RIVES v. ATLANTA NEWSPAPERS, INC.

Decided July 16, 1964—Rehearing denied July 30, 1964.

*Marson G. Dunaway, Jr.,* for plaintiff in error.

*B. P. Gambrell, Henry A. Stewart, Forrest C. Oates, Jr.,* contra.

EBERHARDT, Judge. We deal here with a written motion to dismiss upon the ground that the "court is without jurisdiction over the person of this defendant" which was sustained. There is no question but that the trial court has jurisdiction of the subject matter. Consequently, unless the petition shows on its face that the court has no "jurisdiction of the person," i.e., that the venue is improperly laid, the sustaining of the motion to dismiss was error. *Code* §§ 81-302, 81-501. See Judge Hall's concurrence in *Standford v. Davidson,* 105 Ga. App. 742 (125 SE2d 720).

It is alleged that the defendant is a corporation organized and existing under the laws of this State, with its principal office and place of business in Fulton County, but has an office and agent in Polk County. For the purposes of the motion these allegations must be treated as admitted. Service was perfected upon the person alleged to be the defendant's agent residing in Polk County. This being an action for damages the venue was thus properly laid *if the tort was committed in Polk County.* Code § 22-1102.

While plaintiff alleges that "The Atlanta Journal (in which the alleged libelous matter appeared) published by the defendant has a very large and extensive circulation in Polk and surrounding counties, and throughout the State of Georgia and elsewhere," it is urged by the defendant that the tort, if com-

mitted, was committed when the edition of the paper carrying the article complained of was first generally circulated and that this occurred in Fulton County, circulation elsewhere not being separate torts or wrongs but republications which might be shown in aggravation. If the defendant's contention in this respect be correct, venue was lacking and the sustaining of the motion was proper—provided the court could conclude from the petition that the first publication of the alleged libelous matter *did not* occur in Polk County. *Code* §§ 81-302, 81-501.

Dean Prosser in his Handbook on the Law of Torts (2d Ed. 1955), p. 599, § 94, asserts: "The English rule[1] has been that every sale or delivery of each single copy of a newspaper is a distinct publication, and a separate basis for a cause of action. This rule has received the unqualified acceptance of the Restatement of Torts, and there are American jurisdictions in which it is still the last word of the courts.[2] The majority of the American courts, however, have developed, in cases involving venue

[1]Stemming from the holding in Duke of Brunswick and Luneberg v. Harmer (1849), 14 QB 185, 117 Eng. Rep. 75.

[2]Dean Prosser cites *Central of Ga. R. Co. v. Sheftall*, 118 Ga. 865 (45 SE 687) as one of the authorities supporting this statement. However, an examination of the record in that case does not lead to that conclusion. As will be observed from a reading of the reported case, the defendant was a railroad company, not a publisher of a newspaper, magazine or book. The alleged libelous matter was a notice circularized to the conductors, division superintendents and perhaps some other company employees, and which plaintiff alleged, by amendment, was published by being posted in the company offices at Macon, Atlanta and Savannah, and other places unknown to him, the offices of the company being open to and frequented by the general public who might there see and read the notice. Nothing in the petition, as amended, indicated that the first posting of the notice did not occur in the Macon office. Moreover, there was *no challenge of the venue* by the filing of a plea to the jurisdiction; a matter not reached by general demurrer unless the lack of jurisdiction appears on the face of the petition. *Central R. & Bkg. Co. v. Gamble*, 77 Ga. 584, 587 (2) (3 SE 287); *Harper v. Allen*, 41 Ga. App. 736 (1) (154 SE 651). Consequently, under our

or the statute of limitations, a 'single publication rule,' under which an entire edition of a newspaper, magazine or book is treated as only one publication. . ."

The rule of Brunswick v. Harmer "had its origin in an era which long antedated the modern process of mass publication and nationwide distribution of printed information." Gregoire v. G. P. Putnam's Sons, 298 N.Y. 119 (81 NE2d 45). In the light of present day demands for the printed word in newspaper, magazine and book there is, under the English rule, the constant and frightening spectre of the possibility of one, deeming himself to have been libeled, instituting separate suits in connection with each and every sale of the paper, magazine or book and in every location where the sales may have taken place. Whether meritorious or not, they hang like the sword of Damocles over the head of the publisher. And the plaintiff has the advantage, not afforded in the case of other torts, of selecting the forum in which he will bring his suit.[3]

---

rules of pleading, when the railroad company demurred generally (on other grounds) and filed no plea to the jurisdiction, that matter was *waived*, even if it be said that the petition did not allege that the notice was first published in Macon. *Code* § 81-503.

[3]"The anomalies and absurdities of this branch of the law have been exposed time and time again by able legal writers but an almost incredible judicial and legislative inertia have preserved a mausoleum of antiquities peculiar to the common law and unknown elsewhere in the civilized world." Donnelly, *The Right of Reply: An Alternative to an Action for Libel,* 34 Va. L. Rev. 867, 870. "Unfortunately the English law of defamation is not the deliberate product of any period. It is a mass which has grown by aggregation, with very little intervention from legislation, and special and peculiar circumstances have from time to time shaped its varying course. The result is that perhaps no other branch of the law is as open to criticism for its doubts and difficulties, its meaningless and grotesque anomalies. It is, as a whole, absurd in theory, and very often mischievous in its practical operation." Van Vetchen Veeder, *The History of the Law of Defamation* in 3 Select Essays in Anglo-American Legal History, 446.

Our sister States of Alabama in Age-Herald Publishing Co. v. Huddleston, 207 Ala. 40 (92 S 193, 37 ALR 898), and Mississippi in Forman v. Mississippi Publishers Corp., 195 Miss. 90 (14 S2d 344, 148 ALR 469), along with many others, have adopted the "single publication rule" as the most fair and satisfactory method of insuring a just handling of libel suits against newspaper, magazine or book publishers. Under it there is but one tort in the libeling of another and it is deemed to have been committed at the time and in the place where the paper, magazine or book is first published or circulated. The venue of the action is thus fixed under the Alabama statute[4] providing where suits may be maintained against domestic corporations and which is similar to our *Code* § 22-1102 insofar as they affect this kind of situation, in the county where the paper was first given general circulation. The decision of the Supreme Court of Alabama is well reasoned, giving a detailed and full discussion of its rationale.

It may be said that the "single publication rule" does not solve all problems, as indeed it does not—particularly in the case of publications which have a nationwide circulation. Recognizing the confusion that exists among the States relative to the conflicts of laws problems, the National Conference of Commissioners on Uniform State Laws in 1952 promulgated,[5] and the American Bar Association approved,[6] a proposed Uniform Single Publication Act.[7] But whether accomplished by court decision or legislative act the rule is a step in the right direction—seeking to accomplish a more even-handed justice between all parties.

---

[4] Ala. Code § 6112 (Recompiled in 1958, Title 7, § 60): "A foreign or domestic corporation may be sued in *any county* in which it does business by agent; but all actions for personal injuries must be brought in *the county* where the *injury occurred*, or in the county where the plaintiff resides, if such corporation does business by agent in the county of plaintiff's residence." (Italics supplied).

[5] 1952 Handbook of National Conference of Commissioners on Uniform State Laws, pp. 186-187.

[6] 38 ABAJ 1071.

[7] The Act has been adopted in Arizona, California, Idaho, Illinois, New Mexico, North Dakota and Pennsylvania.

The cases relied upon in the special concurrence are inapposite and do not support the contrary rule.

A general demurrer was held properly sustained to an action brought in Glynn County in *Wallace v. Southern Exp. Co.*, 7 Ga. App. 565 (67 SE 694) because the petition showed on its face that the defendant, a domestic corporation, had its principal office and place of business in Richmond County, while the alleged libel had been published in Hall County. The statement in the second headnote that "A resident corporation is suable for libel only in the county of its principal office or in the county of the publication of the libel," is not inconsistent with the position urged here. The question at issue is simply as to where the publication took place.

In *Western Union Tel. Co. v. Vickers*, 71 Ga. App. 204 (30 SE2d 440) no question was raised as to the venue. On the other hand the court points out in the opinion that the defendant demurred generally and answered, *admitting jurisdiction* in the answer. And, in holding that evidence of publications at places other than that complained of could not be received, this court relied on the case of *Central of Ga. Ry. Co. v. Sheftall*, 118 Ga. 865 (45 SE 687) in which the issue of venue was neither raised nor decided.

We find no case which precludes the adoption of the single publication rule in Georgia. No case cited deals with an action for libel against the publisher of a newspaper or with the problem of venue that arises in that situation. As we see it, that is an open question and since it is, we think the single publication rule a better one to follow.

However, it does not appear from the allegations of the petition here whether the general circulation of the newspaper carrying the alleged libelous matter occurred first in Polk County, or in Fulton County where its principal office and place of business is alleged to be, or somewhere else. Consequently, it would be necessary for the court to take *judicial notice* of the fact that the first general circulation occurred elsewhere than in Polk County in sustaining the motion to dismiss.

"The rule may be stated broadly that generally courts will take notice of whatever matters are known, or ought to be gen-

erally known, within the limits of their jurisdiction, upon the theory that justice does not require that courts be more ignorant than the rest of mankind." 20 Am. Jur. 48, Evidence, § 17. Consequently, courts will take notice of that which is within the knowledge of most men. The test is (1) whether the fact is one of common, everyday knowledge that all men of average intelligence are presumed to know, and (2) whether it is certain and indisputable. That the Atlanta Journal is a newspaper every edition of which is first circulated generally in Fulton County where the publishing plant is located may be so well and generally known as to warrant the taking of judicial notice of that fact, but we are hesitant to assert it. See *Constitution Publishing Co. v. May & Co.*, 16 Ga. App. 599 (85 SE 934). Nothing in the order sustaining the motion, or elsewhere in the record, indicates that the trial court was taking into consideration judicial notice of that fact. While this will often be found unnecessary, it is a matter that we should consider if the question is close. Cf. Byrd v. State, 212 Ala. 266 (102 S 223). It is stated in 20 Am. Jur. 48, supra, that "the power of judicial notice must be exercised with great caution by the courts," and we have held that "judicial notice should be used sparingly by the court to strike down pleadings." *Genesco, Inc. v. Greeson*, 105 Ga. App. 798, 801 (125 SE2d 786).

It is to be noted that the motion to dismiss was made subject to a plea to the jurisdiction and a traverse of the return of service. Although the sustaining of the motion be reversed the defendant has preserved its rights on the question of venue.

Even under the single publication rule it can not be said that lack of venue appears on the face of the petition, and the sustaining of the motion was error. The trial court should proceed with a determination of the plea to the jurisdiction and the traverse to the entry of service. *Code Ann.* § 81-1002.

*Judgment reversed. Bell, P. J., Frankum, Hall and Russell, JJ., concur. Felton, C. J., Nichols, P. J., Jordan and Pannell, JJ., concur specially.*

PANNELL, Judge, concurring specially. I concur in the judgment reached by the majority but cannot concur in the reasons given therefor and the adoption of the so-called "one publica-

tion rule." However desirable the "one publication rule," announced and adopted by the majority, might be, it is not the law of this State and this court is powerless to hold otherwise and to do so is nothing more than judicial legislation.

. The majority takes the position that there is no law or decision of the courts of this State which precludes the adoption of the one publication rule. The one publication rule depends upon the proposition that there is only one cause of action arising out of the publication and distribution of a libelous article by a newspaper. What is the law of Georgia on this subject? As was said by the Supreme Court of this State in *Flint River Steamboat Co. v. Foster*, 5 Ga. 194, 204 (5) (48 AD 248), the laws of Georgia, with reference to their obligation or authority, are: "1st, The Constitution of the United States. 2d, Treaties entered into by the Federal Government before, or since, the adoption of the Constitution. 3d, Laws of the United States, made in pursuance of the Constitution. 4th, The Constitution of the State. 5th, The Statutes of the State. 6th, Provincial Acts that were in force, and binding on the 14th day of May, 1776, so far as they are not contrary to the Constitution, Laws and form of government of the State. 7th, The Common Law of England, and such of the Statute Laws as were usually in force before the revolution, with the foregoing limitation."

"At common law a civil action for libel contained in a newspaper may be brought in any county or district in which the paper is circulated, although distant from that in which the paper is printed and/or in which the parties reside. Haskell v. Bailey (1894) 11 C. C. A. 476, 25 U. S. App. 99, 63 Fed. 873; Vitolo v. Bee Pub. Co. (1901) 66 App. Div. 582, 73 N. Y. Supp. 273; Pinkney v. Collins (1787) 1 T. R. 571, 99 Eng. Reprint, 1257; Blackburn v. Cameron (1871) 5 Ont. Pr. Rep. 341; Irvine v. Duvernay (1878) 4 Quebec L. R. 85." 37 ALR 908. "At common law a libel printed in a newspaper was indictable in any place where the paper containing it had been circulated." 37 ALR 914. It thus appears that under the common law there could be more than one publication or one cause of action arising out of the distribution and circulation of a libelous article. We know of no statute, nor has one been cited by the majority

opinion, changing the common law of this State in this regard. Any doctrine of the common law of force prior to May 14, 1776, adopted by the Act of 1784, except where modified by statute or not adjusted to our situation, is the law of this State and is still operative unless expressly repealed by statute. *Westmoreland v. Powell*, 59 Ga. 256, 258 (3); *Higdon v. Bell*, 25 Ga. App. 54, 55 (4) (102 SE 546). English decisions rendered after May 14, 1776, may be considered as evidence of what the common law was on that date. *Rogers v. Carmichael*, 184 Ga. 496 (192 SE 39).

Furthermore, that the common law is still the law of this State, is evidenced by several opinions of this court and of the Supreme Court of this State in accordance therewith. In *Western Union Tel. Co. v. Vickers*, 71 Ga. App. 204, 205 (5) (30 SE2d 440), it was held: "Where the plaintiff in an action for libel alleges publication of the libelous matter at certain designated times and places, he can not on the trial show publication at a different time and place from those alleged, since such testimony would tend to prove a separate cause of action, as each publication of matter shown to be libelous constitutes a separate cause of action." In *Central of Ga. R. Co. v. Sheftall*, 118 Ga. 865 (45 SE 687), where an alleged libelous circular was distributed by the defendant railway, the petition alleged publication to certain designated individuals and this petition was sought to be amended by alleging a posting of the circular in a public place. In holding that the amendment should not have been allowed the Supreme Court of this State said (p. 867): "Every publication of matter which is shown to be libelous is a separate cause of action (Woods v. Pangburn, 75 N. Y. 498), though all can be joined in one petition; but where the plaintiff brings suit for publication to designated persons, he can not thereafter, by an amendment, show a publication to other persons at a different time and place, since it would set up a new and distinct cause of action. Civil Code, § 3834. Here the original petition alleged that the circular was delivered to five conductors and a division superintendent in Bibb County. The amendment charges that the circular was posted on a bulletin, and thus published to the public at large. These are different

transactions, and may involve different defenses. Civil Code, § 5099. The demurrer thereto should have been sustained."

In *Leavy v. State,* 45 Ga. App. 574, 580 (165 SE 470), this court said: "Before concluding this opinion, we shall advert briefly to the contention of plaintiff in error that the venue was not proved, for the reason that the Brunswick News was published in Glynn County, and the prosecution was in McIntosh County, where that newspaper circulated. It is averred that the question of venue was raised by paragraph 1 of the demurrer to the indictment, which is as follows: 'Said accusation does not allege on the part of this defendant the commission of any crime, misdemeanor, or offense under the laws of Georgia.' We do not concur in this contention. The demurrer does not mention venue, and it nowhere appears from the record that the question sought to be raised was ever presented to the trial judge. . . However, the general rule in such cases is laid down in 17 R. C. L. 464, § 227, in this language: 'It is generally held that a criminal prosecution for libel may be instituted in any jurisdiction where the libelous article was published or circulated, irrespective of where such article was written or printed.' We are aware of the fact that in Florida and a few other states the rule is otherwise, but we think that the foregoing general rule is the proper one; and, even if it were granted that the question under consideration was properly raised, we would shape our ruling in accordance with the rule quoted."

In *Baker v. State,* 97 Ga. 452 (6) (25 SE 341), involving a criminal prosecution for libel because of a letter published by the defendant in a newspaper, the Supreme Court in that case ruled: "Where, in such a trial, it appeared that the alleged libelous matter was published in a newspaper, and that at least one copy of that paper was sent to a given county, this was sufficient evidence as to publication therein, without showing that the paper in question had a general circulation in that county."

The majority attempt to distinguish these cases on various grounds: (1) Some of them are criminal cases. (2) The question of venue was not raised in any of these cases. (3) None of these cases involves a suit against a newspaper. We must agree

that the cases cited in this special concurrence differ from the case now before the court in these respects, but we do not agree that these differences amount to distinctions. If a crime is committed in each county in which a newspaper distributes a criminal libel, how can it be logically said that a civil tort is not also committed? The fact that the distribution of a newspaper in a particular county constitutes a criminal act does not distinguish it from the present case but rather shows a parallel, that is, that the publication in each county is a separate tort or cause of action. It is immaterial that the question of venue is not raised in the cases cited, this for the reason that the cases cited determine the basic rule upon which the decision as to venue is dependent; that is, that the publication in each county is a separate publication and constitutes a separate cause of action. The fact that in none of the cases cited was a newspaper the defendant can have no bearing upon the rules of law applicable thereto as hereinbefore stated. Until the legislature of this State, with valid legislation, provides for different rules of venue as against newspapers, this court is bound by the common law rule and the decisions previously rendered by this court and the Supreme Court of the State of Georgia.

So, we reach the conclusion that where a newspaper item is libelous, publication of the libel for the purpose of venue may occur in any place where the newspaper is distributed or circulated, *Baker v. State*, 97 Ga. 452 (6), supra, *Leavy v. State*, 45 Ga. App. 574 (7), supra, and is exhibited to, and read by, third persons. *Brandon v. Arkansas Fuel Oil Co.*, 64 Ga. App. 139 (2) (12 SE2d 414). The publication of the libel constitutes the origination of the tort and the cause of action thereon and the place of publication controls the venue in a suit against a domestic corporation based thereon under *Code* § 22-1102, which provides that, as against a corporation chartered under the laws of this State, "Suits for damages because of torts . . . may be brought in the county where the cause of action originated," where there is also an agent upon whom service may be had at the place of publication. This rule is applicable even though the newspaper is printed and also published in another county, the home office of the publishing corporation, for the reason that

a corporation may have more than one residence for the purposes of suit. See *Martin & Thompson, Inc. v. Allen,* 188 Ga. 42 (2 SE2d 668).

Even if it would be proper for this court to hold that the printing and distribution in numerous counties constitute only one publication and therefore that there is only one cause of action so as to avoid the claimed inequity of permitting numerous suits based upon separate causes of action in each county where the libelous article is distributed (although no such instance of separate suits having been brought as a matter of practice has been called to our attention), it does not necessarily follow that we also should hold that the one cause of action so resulting could be sued upon only at the principal office or place of business of the publishing corporation, and in so doing hold that the statutory permission to sue in the county where the cause of action originated has no application to cases of libel. The legislature made no such exception. Assuming that only a single cause of action exists by reason of the numerous acts of publication, such single cause of action is not limited by geographical boundaries any more than the numerous acts constituting the cause of action, and the cause of action may be said to originate in any geographical area where any of the acts of publishing occur.. So construed, we give effect to the legislative intent and permit the plaintiff to choose the venue in libel actions either at the principal office of the defendant corporation or in the county where the cause of action originates and the defendant has an agent upon whom service can be made. See, in this connection, Tingley v. Times-Mirror Co. (1904), 144 Cal. 205 (77 P 918); Vicknair v. Daily States Pub. Co. (1919), 144 La. 809 (81 S 324); Oklahoma Pub. Co. v. Kendall (1923), 96 Okla. 194 (221 P 762); Louisville Press Co. v. Tennelly (1899), 105 Ky. 365 (49 SW 15); Cincinnati Times-Star Co. v. France (1901), 22 Ky. L. Rep. 1666 (61 SW 18); Belo v. Wren (1884), 63 Tex. 686; Bailey v. Chapman (1897), 15 Tex. Civ. App. 240 (38 SW 544).

I am authorized to say that Felton, C. J., Nichols, P. J., and Jordan, J., join me in this special concurrence.