TILLMAN PEARSON, Judge.
This interlocutory appeal presents a question of venue in an action for libel. The question involved is whether a cause of action for libel against a newspaper accrues in each county where copies are distributed, so that the plaintiff may elect where he will bring his suit or, conversely, whether the “single publication rule” in libel cases may be applied to require suit in the county where the newspaper has its first and general distribution. The question arises upon the trial court’s order denying defendant’s motion to dismiss the complaint for improper venue. We hold that the cause of action accrued in Volusia County, the county of first publication, and reverse the order denying defendant’s motion.
The plaintiff, Firstamerica Development Corporation, a Florida corporation, is engaged in the sale of tracts of real estate throughout Florida, and is the owner of several tracts of land in Volusia County, Florida, which it is offering for sale in small parcels. The defendant publishes the Daytona Beach Morning Journal, The Daytona Beach Evening News, and the Sunday News-Journal. Defendant’s plant, primary place of business, and primary area of distribution is in Daytona Beach, Volusia County, Florida. There is some circulation of defendant’s newspapers in Dade County, but it does not have or keep an office there for the transaction of any portion of its business.
The plaintiff filed its complaint in Dade County, Florida, where the defendant had circulated newspapers containing a series of allegedly libelous articles. These articles charged the plaintiff with misrepresentation and dishonest advertising practices in the sale of swamp lands in Volusia County as investment property.
The defendant, by motion to dismiss or transfer, challenged the propriety of venue upon the ground that there was no basis for bringing the action in Dade County. The motion was denied, and defendant brought this interlocutory appeal. The assignments of error are: (1) that the court erred in denying the motion to dismiss the complaint, and (2) that the court erred in not transferring the cause to the Circuit Court, Volusia County, pursuant to section 53.17(1), Florida Statutes, F.S.A.
*567 The appropriate venue statute is section 46.04, Florida Statutes, F.S.A., which provides in part:
“Suits against domestic corporations shall be commenced only in the county (or justice’s district) where such corporation shall have or usually keep an office for the transaction of its customary business, or zvhere the cause of action accrued, or where the property in litigation is located * * [Emphasis supplied]
The trial judge decided that a cause of action for libel accrues, for the purpose of applying section 46.04, Florida Statutes, F.S.A., in any county where the alleged libel is circulated. In an able opinion,[1] *568 he recognized the existence of the “single publication rule” in libel cases, but stated that the rule historically grew out of an effort to eliminate multiple suits. The learned trial judge rejected those cases (hereafter cited) which have applied the rule to venue, and reasoned that, while the application of the rule to venue might be proper, the proposition was one of such far reaching effect that the decision upon its adoption in this State should be left to the legislature.
Most judicial opinions and law review commentaries upon this subject credit Duke of Brunswick v. Harmer (1849), 117 Eng. Rep. 75, as the point of origin for the multiple publication principle.[2] The Duke of Brunswick, having been libeled by a newspaper some 14 years previously, sent his servant to the defendant to purchase a copy of the issue in which the libel was contained and started suit thereon. The defendant plead the statute of limitations, but the court ruled that each distribution was a separate and distinct cause of action, and that the statute had not run on the sale to the servant.
In any event, the multiple publication principle originated before the middle of the 19th century when newspapers, as we know them, were unknown. The appellant contends that because this development in the law arose after July 4th, 1776, it is not'a part of Florida’s common law. It is pointed out that the Florida Supreme Court said in Duval v. Thomas, 114 So.2d 791, 795 (1959):
“We are not advised, and our own research has not divulged the clear, unambiguous pronouncement of the common law in effect 4 July 1776, that would leave us no room but to. adopt it in this case under the mandate of Sec. 2.01, supra [citations omitted]. As has been remarked by this-court, when grave doubt exists of a true common law doctrine * * * we may, as was written in Ripley v. Ewell, supra [61 So.2d 420], exercise a ‘broad discretion’ taking ‘into account the changes in our social and economic customs and present day conceptions, of right and justice.’ It is, to repeat, only when the common law is plain that we must observe it.”
It is also urged that the “multiple publication rule” has been laid to rest by the overwhelming weight of modern American authority.
Appellant then urges that the “single publication” rule is a rule of venue, and has not only the attribute of authority, but is also universally recognized as being fair, just, and the only rule that is feasible in this modern age.
Upon the other hand, the appellee contends that the appellant has misapprehended the historical basis and reasons for the “single publication rule”, and that the rule should not, and does not, apply to determine venue. It is admitted that the “single-publication rule” is sound for some purposes. Thus, the appellee does not argue that more than one action may be brought, for the libel under the “multiple publication rule.” It readily concedes that only one tort or libel was committed. Nor does appellee argue that a new statute of limitations begins to run each time the libelous article is circulated in another *569 county. It is urged that even though the “single publication rule” exists, venue still should, and may properly, he laid in any county where the libelous articles are circulated, if the appropriate venue statute so provides.
Appellee then argues that the application of the “single publication rule” to prohibit this action from being brought in Dade County would be manifestly unfair. It is said that such an application would permit a defendant-publisher to libel citizens with impunity secure in the knowledge that if sued, the action could be bought only in the tort-feasor’s own backyard.
Even though appellant and appellee agree that there is no governing case in Florida, each party has cited Florida cases as indicative of the holding which they urge. The appellant cites Eberhardt v. Barker, 104 Fla. 535, 140 So. 633 (1932). The petitioner, Eberhardt, had been indicted for criminal libel in Highlands County; a plea in abatement in the nature of a plea of privilege had been interposed, setting up petitioners alleged right to be prosecuted in Leon County. After a demurrer to the plea in abatement had been sustained, a suggestion for a writ of prohibition was filed in the Supreme Court. The Court held that the trial of the defendant in Highlands County was in excess of jurisdiction. In reaching this conclusion, the court determined that insofar as criminal libel is concerned the single publication rule is the law of this jurisdiction. The result of this holding was that the petitioner could be prosecuted only in the county where the alleged libelous material was composed and printed or where the primary circulation occurred. We consider this case to be extremely important because it is a recognition (although in a different field of law) of the application of the single publication rule to a venue question.
The appellee relies strongly upon Luckie v. McCall Mfg. Co., Fla.App.1963, 153 So. 2d 311, which was decided upon an appeal from an interlocutory order denying a defendant’s motion to dismiss a suit for lack of venue. The First District Court of Appeal, speaking through Judge Sturgis, with Judge Wigginton dissenting, held that the trial court correctly denied the motion to dismiss. The relief sought in the trial court in Hamilton County was an injunction against the use of trade names, marks and labels which the plaintiff claimed belonged to it. The action was brought to restrain a use of the trade marks in Hamilton County. The defendants, both individual and corporate, were residents of Dade County and the defendant corporation had its principal place of business in Dade County. The labels in question were placed upon defendants products in Dade County. Some of the products however were marketed in Hamilton County. The court held that, while the manufacture of the articles and the attachment of the labels in Dade County might, in itself, constitute a basis for suit in that County, the existence of the right in Dade County did not deprive the Hamilton County court of venue in a suit for injunction, where an independent overt act was being committed in Hamilton County.
This case is strongly indicative of an interpretation of the venue statute which would hold that an action accrues in every county where injury occurred; but the case may be distinguished upon the basis of the different type of tort involved and the relief sought. It may be a wholesome rule that as many injunctions as necessary may be issued by as many courts as necessary in order to protect a business from the illegal usurpation of its trade marks, trade names and other indicia of commercial identity. However, this basis for interpretation is not applicable in the case sub judice because all of the modern authorities seem to agree that the mass communication of a single defamatory article constitutes a single wrong, and that there is, therefore, only one cause of action *570 for the composite tort. See 1 Harper & James on Torts, § 5.16, page 395, and cases collected at 37 A.L.R. 908 and 148 A.L.R. 477.
We are inclined to the reasoning on this problem set forth in Julian v. Kansas City Star Co., 209 Mo. 35, 107 S.W. 496 (1907); Age-Herald Pub. Co. v. Huddleston, 207 Ala. 40, 92 So. 193, 37 A.L.R. 898 (1921); and Rives v. Atlanta Newspaper, Inc., 110 Ga.App. 184, 138 S.E.2d 100 (1964). The Julian v. Kansas City Star opinion appears to be the leading case in this Country upon the question. The Missouri statute permitted an action to be brought against corporations in “the county where the cause of action accrued.” It was held that a libel suit against the newspaper could be maintained in any county where the newspaper was circulated. The opposing view was stated in an able dissent where it was pointed out that although it has been held that each publication of a libel may constitute a cause of action, yet it is the general rule that but one suit can be brought on the same libelous publication no matter how many places or how many times it has been published. It was then pointed out that the extent of the publication may be shown to enhance the damages, and that it would comport with justice and right to say that the cause of action in cases of libel accrues by the first publication of the article.
The Age-Herald Pub. Co. case, supra, followed the dissenting view expressed in the Missouri case, and reasoned that it is difficult to see how a single cause of action, complete in one place and fully accrued, can subsequently accrue in another place, or in many other places for the purpose of acquiring a new venue. The Alabama court added:
We do not see how there can be any conflict of opinion as to the unfairness, injustice, or impolicy of permitting aggrieved persons, in this class of cases only, to select at their pleasure any judicial forum within the state-where the political, religious, industrial, moral, or personal predilections-of the local citizenship may readily furnish a jury whose biased views will probably be reflected, however sincerely, in a verdict favorable to them.”
:]'- Hi * * * *
“Summarizing our conclusions, as-above indicated, we hold that in an action for libel against a newspaper the injury — the breach of duty — occurs, within the meaning and application of the venue statute, at the place where the newspaper is primarily published, and not in other places where it is secondarily published, that is merely circulated; that under the allegations of the pleas in abatement, the place of primary publication, and the locus of the injury, was Birmingham, in Jefferson county; and that this action could be prosecuted only in Jefferson county” (92 So. at 198)
The Georgia Court of Appeals in Rives v. Atlanta Newspaper, Inc., 110 Ga.App. 184, 138 S.E.2d 100 (1964), followed the ably reasoned Alabama case, and determined that the application of the single publication rule to venue, “whether accomplished by court decision or legislative act is a step in the right direction — seeking to accomplish a more even-handed justice between all parties.” See also Forman v. Mississippi Publishers Corp., 195 Miss. 90, 14 So.2d 334, 148 A.L.R. 469 (1943).
We conclude that the Florida statute, which specifically refers to the accrual of the cause of action, means that venue lies where the cause of action first became complete and, therefore, actionable. In the instant case, under the undisputed statement of facts, this occurred in Volusia County. Therefore, the venue for this action will be properly laid in that county.
The order denying defendant’s motion to dismiss for improper venue is reversed, *571 and the cause is remanded to the Circuit ■Court with directions to transfer the cause to Volusia County pursuant to section 53.17, .Florida Statutes, F.S.A.
Reversed and remanded.

. The trial judge in a lucid opinion, which was withdrawn, set forth his views as follows:
■“The inapplicability of the ‘single publication rule’ to the facts in this case ■can be seen by examining the nature of the rule, the reasons for it and the procedure in which it should be applied.
“The nature of the rule is best understood by examining the concept of ‘publication’. To publish a libel is to make it known to any person other than the ^person libeled. Prosser, Law of Torts, 597 (1955). At common law a separate cause of action arises each time the alleged libel is revealed to a third party. Duke of Brunswick v. Harmer, 14 Q.B. 185, 117 Eng.Rep. 75 (1849). The ‘multiple publication rule’, as it was called, regarded every sale or delivery of each single publication of a newspaper or magazine as a distinct publication and a separate basis for liability. Odgers, Libel and Slander, 6th ed. 132 (1929). “The ‘multiple pubieation rule’ might have been necessary in 1849 when the process of publication was slow and many years might elapse before the publication was distributed and the damages to a plaintiff’s reputation could be ascertained. 'Today, with the advent of modern means of publication, estimating the extent of •damages accruing from a libel may be done quickly and with reliability. 62 Harv.L.Rev. 1041 at 1046 (1949).
“The dangers of the ‘multiple publication •rule’ are obvious. A defamation in a single issue of ‘Life Magazine’ might result in as many as 3,900,000 possible causes of action for separate torts, based on the publication to each individual reader. See Hartmann v. Time, Inc., 166 F.2d 127 (3rd Cir. 1947). The sum of the cause of actions arising would be more than three times the estimated number of all the reported decisions in the English language. 90 Uniform Laws Ann. at 171.
“Judicial effort has been made to reduce the multiplicity of suits possible under the ‘multiple publication rule.’ This effort, known as the ‘single publication rule’, states that ‘the initial publication of a wide-spread libel “engroses” all subsequent publications and * * * this single publication comprises the only actionable tort’. 48 Col.L.Rev. 932, 933 (1948). The rule has been applied to newspapers, magazines and books. 29 U.Chi.L.Rev. 569 at 572 (1962).
“Initially, the ‘single publication rule’ was ‘merely a convenient tool to express the rule that all causes of action for widely circulated libel must be litigated in one trial, and that each sale need not be separately pleaded and proved’. 62 Harv.L.Rev. 1041, at 1049 (1949). By gradual extension it has been applied to venue, Julian v. Kansas City Star Co., 209 Mo. 35, 107 S.W. 496 (1908), and the statute of limitations. Wolfson v. Syrcuse Newspapers, Inc. 254 App.Div. 211, 4 N.Y.S.2d 640, aff’d. 279 N.Y. 716, 18 N.E.2d 676 (1938).
“The process of extension has been questioned. 62 Harv.L.Rev. 1041 (1949). Courts attempts to adopt the ‘single publication rule’ have often lead to conflicting interpretations. See Zuck v. Interstate Publishing Corp., 317 F.2d 727 (1963) (Resolving the conflict in the New York courts with regard to when the statute of limitations begins under the ‘single publication rule’). The courts can only establish a working concept of the rule by means of litigation before them, which takes many years and causes many problems during the interim.”
«* * * Movant urges that the rule be adopted in Florida by judicial procedure. Although there is authority for such action, we feel it would be unwise. The enactment of legislation would be far superior to adopting the rule by judicial decision. It would allow a comprehensive rule to take effect immediately rather than through step-by-step decisions in the Courts. * * *
“Nicholas St. John Green, some ninety years ago stated that the law of slander and libel is analogous to a crooked, wrenched and distorted tree. Green, ‘Slander and Libel,’ 6 Am.L.Rev. 593 (1872). With regard to the single pub *568 lication aspects of libel, judicial pruning will not be a suitable tool. Rather than trying to set straight a distorted area of the law, a new substantive rule should be created by the process of legislation.
“For these reasons, the Movant’s Motion to Dismiss is denied.
After withdrawing the foregoing opinion, a second hearing was held. At the conclusion of this hearing, the trial judge stated:
“My feeling is tbat wherever there is a publication, there is a cause of action. This is the injuria.
“X must, therefore, hold that anywhere where there has been a publication, there has been a cause of action.”

. Prosser, Interstate Publications, 51 Mich.L.Rev. 959, 961 (1953).